CASE NO. 24-10293-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

FRIDA KAHLO CORPORATION, a Panamanian corporation, and
FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation,

*Appellants-Plaintiffs*,

v.

MARA CRISTINA TERESA ROMEO PINEDO, an individual, and
FAMILIA KAHLO S.A. DE C.V., a Mexico corporation,

*Appellees-Defendants*.

---

Appeal from the United States District Court
for the Southern District of Florida, Miami Division
District Court Case No. 1:22-cv-22399-DPG

---

**APPELLANTS' PRINCIPAL BRIEF**

---

Darlene Barron
Florida Bar No. 108873
dbarron@avilalaw.com
William R. Trueba, Jr.
Florida Bar No. 117544
wtrueba@avilalaw.com
AVILA RODRIGUEZ HERNANDEZ
MENA & GARRO LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134-6049
Telephone: (786) 594-4103

CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com
ALONSO APPEALS
2020 Ponce de Leon Blvd.,
Suite 1005B
Coral Gables, FL 33134
Telephone: (954) 667-8675

*Counsel for Appellants*
*Frida Kahlo Corporation and Frida Kahlo Investments, S.A.*

***Frida Kahlo Corporation, et al. v. Mara Romeo Pinedo, et al.***
**Case No. 24-10293-C**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellants/Plaintiffs Frida Kahlo Corporation and Kahlo Investments, S.A., by and through undersigned counsel, and pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 26.1-2 and 26.1-3, hereby certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, or related entities may have an interest in the outcome of this case or appeal:

1.  Alonso, Cristina, Esq. (counsel for Appellants-Plaintiffs)

2.  Andrade Lehman, Joanna, Esq. (counsel for Appellees-Defendants)

3.  Avila Rodriguez Hernandez Mena & Garro LLP (counsel for Appellants-Plaintiffs)

4.  Barron, Darlene, Esq. (counsel for Appellants-Plaintiffs)

5.  Cristina Alonso, P.L.L.C. d/b/a Alonso Appeals (counsel for Appellants-Plaintiffs)

6.  EPGD Attorneys At Law, P.A. (counsel for Appellees-Defendants)

7.  Familia Kahlo S.A. de C.V., a Mexican corporation (Appellee-Defendant)

*Frida Kahlo Corporation, et al. v. Mara Romeo Pinedo, et al.*
**Case No. 24-10293-C**

8.  Frida Kahlo Corporation, a Panamanian corporation (Appellant-Plaintiff)

9.  Gayles, Hon. Darrin P. (United States District Court Judge)

10. Gomez, Oscar A., Esq. (counsel for Appellees-Defendants)

11. Kahlo Investments, S.A., a Panamanian corporation (Appellant-Plaintiff)

12. Pinedo, Mara Cristina Teresa Romeo (Appellee-Defendant)

13. Torres, Hon. Edwin G. (United States District Court Magistrate Judge)

14. Trueba, Jr., William R., Esq. (counsel for Appellants-Plaintiffs)

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580

## <u>CORPORATE DISCLOSURE STATEMENT (CIP)</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Local Rules 26.1-1, 26.1-2, and 26.1-3, Appellants/Plaintiffs Frida Kahlo Corporation and Frida Kahlo Investments, S.A., state that they are both Panamanian corporations, which are not publicly traded companies or owned by any publicly traded company or a parent corporation.

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants believe that oral argument would be beneficial to resolution of the issues on appeal.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT ..........................................C-1

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF CITATIONS ......................................................................iv

JURISDICTIONAL STATEMENT ........................................................ix

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE.................................................................2

    I.      STATEMENT OF THE FACTS..........................................2

          A.    Facts Giving Rise to Suit .........................................2

          B.    Instant Suit ...............................................................7

          C.    Amended Motion to Dismiss, Opposition, and Evidence..........9

          D.    Order on Appeal........................................................15

    II.     STANDARD OF REVIEW ...............................................18

SUMMARY OF THE ARGUMENT .......................................................19

ARGUMENT ...........................................................................................22

    I.      The District Court Erred in Dismissing the First Amended
          Complaint for Lack of Personal Jurisdiction Over Defendants ..........22

          A.    Personal Jurisdiction Exists Under Florida's Long-Arm
                Statute........................................................................24

## TABLE OF CONTENTS
### (Continued)

Page

B.    The District Court Erred in Finding that Florida's Corporate Shield Doctrine Prevented it From Exercising Personal Jurisdiction Over Pinedo ..............................................26

C.    Exercising Personal Jurisdiction Over Defendants Comports with Due Process Requirements ............................29

    1.    Prong Two: Purposeful Availment .................................30

        (a)    Purposeful availment under "minimum contacts" test.........................................................31

        (b)    The applicable forum is the United States ..........35

        (c)    Purposeful availment under "effects test"............40

    2.    Prong One: Arising Out of or Relatedness ....................41

    3.    Prong Three: Fair Play and Substantial Justice ..............42

CONCLUSION ......................................................................................45

CERTIFICATE OF COMPLIANCE .......................................................47

CERTIFICATE OF SERVICE ...............................................................48

## TABLE OF CITATIONS

**Page**

### Cases

*Brennan v. Roman Catholic Diocese of Syracuse New York*,

　322 Fed. Appx. 852 (11th Cir. 2009) .............................................................40

*Bristol-Myers Squibb Co. v. Superior Court*,

　137 S. Ct. 1773 (2017)......................................................................................24

*Calder v. Jones*,

　465 U.S. 783 (1984)......................................................................... 20, 30, 41

*Coach, Inc. v. Class Beach Wireless, Ltd. Liab. Co.*,

　No. 1:12-cv-22748, 2013 U.S. Dist. LEXIS 188923

　(S.D. Fla. Mar. 21, 2013).................................................................................28

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,

　593 F.3D 1249 (11th Cir. 2010) ........................................................... 30, 43

*Doe v. Thompson*,

　620 So. 2d 1004 (Fla. 1993) ................................................................. 26, 27

*Don King Prods. v. Mosley*,

　No. 15-61717-CV-WILLIAMS, 2016 U.S. Dist. LEXIS 188060

　(S.D. Fla. Jan. 26, 2016).................................................................................28

*Douglas v. Cruise Yacht Op Co.*,

　No. 21-23980-CIV, 2022 WL 1719312 (S.D. Fla. May 27, 2022)..............18

## TABLE OF CITATIONS
### (Continued)

**Page**

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,

    141 S. Ct. 1017 (2021)............................................................ 24, 41

\*Genetic Veterinary Sciences, Inc. v. LABOKLIN, GmbH & Co. KG*,

    933 F.3d 1302 (Fed. Cir. 2019) ........................................ 34, 35, 38

\*Healthe, Inc. v. High Energy Ozone LLC*,

    533 F. Supp. 3d 1120 (M.D. Fla. 2021) ........................... 17, 31, 32

*Honus Wagner Co. v. Luminary Group LLC*,

    No. 17-61317-CIV, 2017 U.S. Dist. LEXIS 210097

    (S.D. Fla. Dec. 21, 2017) ..................................................................25

*HSI IP, Inc. v. Champion Window Mfg. & Supply Co., Inc.*,

    510 F. Supp. 2d 948 (M.D. Fla. 2007) ..........................................25

*Internet Solutions Corp. v. Marshall*,

    557 F.3d 1293 (11th Cir. 2009) ......................................................29

*Jack Henry & Assocs., Inc. v. Plano Encryption Tech. LLC*,

    910 F.3d 1199 (Fed. Cir. 2018) ............................................. 34, 44

*Jackson v. Grupo Indus. Hotelero, S.A.*,

    No. 07-22046-CIV, 2008 U.S. Dist. LEXIS 88922

    (S.D. Fla. Oct. 20, 2008)..................................................................37

*Keeton v. Hustler Magazine*, Inc.,

    465 U.S. 770 (1984)..........................................................................44

**TABLE OF CITATIONS**
**(Continued)**

**Page**

\*_Kitroser v. Hurt_,

    85 So. 3d 1084 (Fla. 2012) .................................................................. 26, 27

\*_Licciardello v. Lovelady_,

    544 F.3d 1280 (11th Cir. 2008) .................... 19, 23, 24, 25, 35, 40, 41, 43, 44

\*_Louis Vuitton Malletier, S.A. v. Mosseri_,

    736 F.3d 1339 (11th Cir. 2013) .................... 19, 22, 24, 25, 27, 30, 31, 40, 43

_Macrotrend Cap. Grp. Inc. v. Edwards_,

    No. 18-61327-CIV, 2019 WL 2106421

    (S.D. Fla. Mar. 4, 2019)............................................................. 25, 28, 43, 44

_Madara v. Hall_,

    916 F.2d 1510 (11th Cir. 1990) ............................................................. 22, 23

_McCullough v. Royal Caribbean Cruises, Ltd._,

    268 F. Supp. 3d 1336 (S.D. Fla. 2017)..........................................................16

_Meier v. Sun Int'l Hotels, Ltd._,

    288 F.3d 1264 (11th Cir. 2002) ...................................................................22

_Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc._,

    148 F.3d 1355 (Fed. Cir. 1998) ...................................................... 17, 33, 34

\*_S.E.C. v. Carrillo_,

    115 F.3d 1540 (11th Cir. 1997) ...................................................... 31, 36, 37

## TABLE OF CITATIONS
### (Continued)

**Page**

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,

    563 F.3d 1285 (Fed. Cir. 2009) ....................................................37

*Trimble Inc. v. PerDiemCo LLC*,

    997 F.3d 1147 (Fed. Cir. 2021) ....................................... 33, 34, 35

*United Techs. Corp. v. Mazer*,

    556 F.3d 1260 (11th Cir. 2009) ...................................................22

*Valle v. Trivago GmbH*,

    56 F.4th 1265 (11th Cir. 2022) ....................................................41

*Venetian Salami Co. v. Parthenais*,

    554 So. 2d 499 (Fla. 1989) ..........................................................36

*Wendt v. Horowitz*,

    822 So. 2d 1252 (Fla. 2002) ........................................................28

### Statutes

§ 48.193(1)(a)(2), Fla. Stat. ............................................................. 24, 25

§ 48.193, Fla. Stat. (2011)....................................................................27

15 U.S.C. § 1051 ("The Lanham Act") ...................................... ix, 29, 37

15 U.S.C. § 1121 ........................................................................... ix

28 U.S.C. § 1291 .............................................................................x

28 U.S.C. § 1331 ........................................................................... ix

28 U.S.C. § 1332(a) ....................................................................... ix

## <u>TABLE OF CITATIONS</u>
### (Continued)

<u>**Page**</u>

28 U.S.C. § 1367 ............................................................................... x

28 U.S.C. § 2201 ......................................................................... ix, 2, 8

## **Rules**

Rule 4(k)(2), Fed. R. Civ. P. .......................................... 11, 16, 21, 35, 36, 37, 38, 40

Rule 7.1(c), Local Rules, Southern District of Florida ............................................. 18

## JURISDICTIONAL STATEMENT

The district court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because Appellants-Plaintiffs Frida Kahlo Corporation ("FKC") and Frida Kahlo Investments, S.A. are Panamanian corporations with their principal place of business in Florida, while Appellees-Defendants Mara Cristina Romeo Pinedo is a resident and citizen of Mexico and Familia Kahlo, S.A. is a Mexican corporation. The amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc 14:2-3 (¶¶ 3, 8-14); Doc 68:1-2, 6 n.4).[1]

Appellants-Plaintiffs brought this lawsuit against Appellees-Defendants for tortious interference with an advantageous business relationship under Florida law, and for declaratory judgment under 28 U.S.C. § 2201, seeking a declaration as to FKC's rights to use certain trademarks in connection with art exhibitions and to use the images of the artist, Frida Kahlo, as licensed by FKC. (Doc 14). The district court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because the declaratory judgment action is brought under The Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the cease-and-desist letters sent by Appellees-Defendants that gave rise to this lawsuit, claim that Appellees-Defendants own trademarks that are actually owned by FKC (Doc 14:2 (¶ 2); Doc 68:6 n.4). *See* 15 U.S.C. § 1121. This Court

---

[1] References to the record are to document number and page number: (Doc [Docket No.]:[Page No.] (¶ [Paragraph No.])).

has supplemental jurisdiction over the tortious interference action arising under Florida law, pursuant to 28 U.S.C. § 1367, because it is related to the declaratory judgment action arising under the Lanham Act such that they form part of the same case or controversy under Article III of the United States Constitution (Doc 14:2 (¶ 4)). The district court found it had subject matter jurisdiction. (Doc 68:5-6).

The December 28, 2023 Order on appeal dismisses the First Amended Complaint without prejudice for lack of personal jurisdiction. (Doc 68:13). The Notice of Appeal was timely filed on January 26, 2024. (Doc 69). This Court has jurisdiction over this appeal from a final judgment. *See* 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the district court erred in granting Appellees-Defendants'
Amended Motion to Dismiss (Doc 29), dismissing Appellants-
Plaintiffs' First Amended Complaint (Doc 14) without prejudice for
lack of personal jurisdiction over Appellees-Defendants (Doc 68)

2.    Whether the district court erred in determining that pursuant to
Florida's corporate shield doctrine, it did not have specific personal
jurisdiction over Appellee-Defendant Pinedo, an owner and officer of
Appellee-Defendant Familia Kahlo

3.    Whether the district court erred in determining that exercising specific
personal jurisdiction over Appellees-Defendants does not comport with
federal due process requirements

## STATEMENT OF THE CASE

Appellants-Plaintiffs, Frida Kahlo Corporation ("FKC") and Frida Kahlo Investments, S.A., brought this lawsuit against Appellees-Defendants, Familia Kahlo S.A. and Mara Cristina Teresa Romeo Pinedo ("Pinedo"), for tortious interference with an advantageous business relationship under Florida law, and for declaratory judgment under 28 U.S.C. § 2201. Pinedo was a secretary of FKC and is an officer and owner of Familia Kahlo. (Doc 14:3 (¶ 12), 4 (¶ 15); Doc 68:1).

The cease-and-desist letters sent by Defendants, giving rise to this lawsuit, claim that they own trademarks that are actually owned by FKC. Plaintiffs seek a declaration under The Lanham Act as to the parties' rights to use certain trademarks in connection with art exhibitions and phone covers and to use the images of artist, Frida Kahlo, as licensed by FKC. (Doc 14:1 (¶ 1), 10 (¶ 25), 17-19 (¶¶ 68-81); Doc 68:4-5).

Plaintiffs appeal an Order granting Defendants' Amended Motion to Dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction and dismissing the complaint without prejudice. (Doc 69). Plaintiffs are citizens of Florida, while Familia Kahlo and Pinedo are citizens of Mexico. (Doc 14:2 (¶ 3), 3; Doc 68:1-2).

## I.    STATEMENT OF THE FACTS

### A.    Facts Giving Rise to Suit

The world-famous Mexican artist, Magdalena Carmen Frida Kahlo y Calderon (aka "Frida Kahlo"), died in 1954. (Doc 14:15 (¶ 55); Doc 68:1).

2

Following her death, certain rights to her intellectual property passed to her niece, Isolda Pinedo Kahlo ("Isolda"). Defendant Pinedo is Isolda's daughter. (Doc 29-1:6 (¶¶ 15-17); Doc 68:2).

FKC, a Panamanian corporation with its principal place of business in Florida, was formed in 2004 and began licensing and commercializing the "FRIDA KAHLO" brand, worldwide, as the owner of the Frida Kahlo related trademarks and in accordance with an assignment agreement between Frikahlo de Mexico, S.A. de C.V., represented by Isolda and Pinedo on the one hand, and Casablanca Distributors C.A. on the other. Pursuant to the parties' agreement, thirteen trademarks were assigned by Isolda Pinedo Kahlo to FKC in connection with certain goods (the "2005 Assignment"). Thereafter, a dispute arose between Pinedo and FKC, regarding the assigned intellectual property rights resulting in litigation in Panama and Spain. (Doc 14:10 (¶ 26); Doc 29-1:6 (¶ 15-17); Doc 68:2). Plaintiffs assert the 2005 Assignment does not include the trademarks at issue in this lawsuit, which were obtained by FKC more than fifteen years after the 2005 Assignment. (Doc 30:3-4, 7-8).

FKC is the owner of hundreds of trademarks worldwide, including five U.S. trademark registrations in connection with entertainment services, namely art

exhibitions[2] and one U.S. trademark registration in connection with cell phone covers[3] that are at issue in this lawsuit. (Doc 14:10-11 (¶ 27); Doc 30-1; Doc 68:2). FKC also has established common law rights through substantial and continuous use in commerce in the U.S. and is the owner of several copyrighted works, thereby expanding its product line to include goods and services not included in and beyond those in the original 2005 Assignment. (Doc 14:11 (¶¶ 28, 29), Doc 68:2).

Frida Kahlo Investments, a Panamanian corporation with its office in Florida, is FKC's wholly owned subsidiary. It manages FKC's trademarks and other intellectual property rights, including the management of its trademark licenses. (Doc 14:3 (¶ 9), 11 (¶¶ 27, 29); Doc 68:2).

Plaintiffs have contracts with Primo Entertainment LLC, a Florida limited liability company, and Garber IMC as licensees, to cobrand, promote and publish walk-through exhibitions titled Frida Kahlo – The Life of an Icon ("exhibitions"). Plaintiffs have a contract with OEG Latino, a division of One Entertainment Group, LLC ("OEG"), a Texas limited liability company and licensing agent. OEG is an

---

[2] The trademarks at issue are registered and listed in the First Amended Complaint as (i) FRIDA KAHLO (stylized) in U.S. Reg. No. 6061413, (ii) IMMERSIVE FRIDA KAHLO EXHIBIT in U.S. Reg. No. 6908398; (iii) FRIDA KAHLO EXPERIENCE in U.S. Reg. No. 6896828, (iv) FRIDA EXPERIENCE in U.S. Serial No. 90780539, and (v) FRIDA KAHLO (standard character) in U.S. Reg. No. 6896829. (Doc 14:10 (¶ 27)).

[3] FRIDA KAHLO (standard character) in U.S. Reg. No. 6211125. (Doc 14:11 (¶ 27)).

agent for Casely, Inc., a New York corporation that co-brands, produces, promotes, and sells phone covers, as a licensee, in stores located at the exhibitions. (Doc 14:11 (¶¶ 30-32)).

The exhibitions explore a journey through Frida Kahlo's biography using collections of historical photographs, original films, digital environments, artistic installations, collector's items, and newly created music. At all relevant times, Plaintiffs advertised the exhibitions on their website at https://fridakahlocorporation.com. FKC's website displayed its phone number in the (305) area code, which serves Miami-Dade County, Florida. The exhibitions were scheduled in seven cities in the United States, including Miami, Florida. Consumers were able to purchase tickets for the exhibitions in the United States, including the exhibition scheduled in Miami through the website. (Doc 14:12 (¶¶ 35-38); Doc 68:3). Plaintiffs obtained all required copyright licenses from photographers for the use of images of Frida Kahlo in the photographs used in the exhibitions. (Doc 14:15 (¶ 54)).

Pinedo, individually and on behalf of Familia Kahlo, regularly travels throughout the United States. Her travels include attendance in 2021 at the San Antonio Botanical Gardens Frida Kahlo Oasis exhibit and the San Antonio Botanical Gardens Garden to Table Chef Series in Texas, in 2022 at the Immersive Frida Kahlo show in Boston, and the opening of the Immersive Frida Kahlo exhibits in Dallas,

Denver, San Francisco, Chicago, New York, Houston, and Los Angeles, as well as the Impacto Latino awards in New York. (Doc 14:4-10 (¶¶ 16-24); Doc 68:1-2).

The present litigation arises from Defendants' cease and desist letter campaign related to Plaintiffs' immersive art exhibitions and cell phone covers offered for sale at such exhibitions, directed at Plaintiffs' licensees throughout the country. Beginning in 2021, Pinedo and Familia Kahlo, through the General Manager of Familia Kahlo, Alfonso Durán, sent the cease and desist letters at issue to several of FKC's licensees in the United States and Florida, demanding that the licensees "refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo," all the while knowing Plaintiffs conduct business from their Miami offices. (Doc 14:11(¶ 33), 13-14 (¶¶ 40-48); Doc 29-2:2-3, 84-85, 166-67; Doc 68:2-3). In the letters, Familia Kahlo identifies as a representative of Pinedo, personally, stating, "[w]e would like to inform you that our represented, the heiresses of the painter Frida Kahlo" and "in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo." (Doc 14:13(¶ 42); Doc 29-2:2-3, 84-85, 166-67). The letters were sent to FKC licensees, Cantor Fine Art, Rage On, CIC Media TV, Primo Entertainment, OEG Latino, and Casely. CIC Media TV and Primo Entertainment are in Miami, Florida. (Doc 14: 12-14 (¶¶ 40, 48); Doc 29-2:2, 84, 166)).

In their cease-and-desist letters, Defendants claim they own the rights to the

name, image, and likeness of Frida Kahlo. The letters demanded that Plaintiffs'
licensees "withdraw definitely from the promotion of exhibitions" in the U.S. and
threaten to hold licensees liable for any business initiative that involves the use of
the name or image of Frida Kahlo. These letters request the nullity of co-production
agreements between FKC and its licensees in Florida and elsewhere in the U.S. One
of the exhibitions Defendants sought to shut down was scheduled in Miami,
available through Plaintiffs' site showing contact information with a Miami phone
number. The letters did not identify or provide any trademark or copyright
registrations, or otherwise provide any evidence or information identifying that
Defendants own any intellectual property rights relating to the use of Frida Kahlo's
image and name in connection with the exhibitions or the phone covers. (Doc 14:12-
15 (¶¶ 36-52); Doc 29-2:2-3, 84-85, 166-67; Doc 68:3-4).

Plaintiffs' licensees use FKC's trademarks, which include the "name" Frida
Kahlo in connection with the exhibitions and phone covers. (Doc 14:15 (¶ 52); Doc
30-1). FKC licensees, Primo Entertainment (located in Florida), OEG, Garber IMC
and Casely, requested that FKC dedicate resources to address the letters. (Doc 14:11
(¶ 34), 18 (¶ 75); Doc 68:3-4).

### B.    Instant Suit

Based on these letters, on July 29, 2022, Plaintiffs filed the present suit against
Defendants, asserting actions for copyright infringement, tortious interference with

an advantageous business relationship under Florida law, and for declaratory judgment under 28 U.S.C. § 2201 for a declaration as to the rights of the parties to use the trademarks at issue in connection with exhibitions and phone covers and to use the images of Frida Kahlo, as licensed by FKC. (Doc 1). On December 15, 2022, Plaintiffs filed the First Amended Complaint, dropping the copyright infringement claim. (Doc 14:14-15 (¶¶ 49-52), 16-18 (¶¶ 62-81); Doc 68:4-5).

Plaintiffs alleged that notwithstanding the contents of the letters, Defendants do not have any rights of publicity related to Frida Kahlo's name or likeness in the United States. Defendants failed to defend any of the purported trademark rights they allege to own in their cease-and-desist letters to Plaintiffs' licensees. Defendants have never enforced any purported trademark rights in FRIDA KAHLO in the United States. Defendants had the opportunity before the United States Patent & Trademark Office's Trademark Trial and Appeal Board to defend their purported trademark and intellectual property rights – but failed to do so. The Trademark Trial and Appeal Board refused registrations of FRIDA KAHLO-related trademarks applied for by Pinedo and Familia Kahlo. (Doc 14:15 (¶¶ 56-60); Doc 30-3; Doc 68:3-4).

Thus, Plaintiffs alleged that by sending cease and desist letters into the United States and Florida to their licensees, Defendants intended to cause the licensees to cease production and promotion of the exhibitions and the phone covers without

justification, thereby interfering with Plaintiffs' business relationships and contracts with Plaintiffs' licensees, causing damages. (Doc 14:15 (¶¶ 56-61); Doc 68:4, 8). Plaintiffs sought in excess of $75,000 in damages, a declaration of the parties' rights, attorneys' fees under the Lanham Act, and a permanent injunction that protects their intellectual property and enjoins Defendants from interfering with Plaintiffs' licensees. (Doc 14:19; Doc 68:4).

### C.    Amended Motion to Dismiss, Opposition, and Evidence

On January 31, 2023, Defendants filed their Amended Motion to Dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction. (Doc 29).[4] They submitted the sworn declaration of Durán, who acknowledged sending the cease-and-desist letters. (Doc 29-1:3). He denied sending them to interfere with business operations and contended they were to inform third parties of Familia Kahlo's intellectual property rights and the infringement of those rights by FKC and the third parties, if they continued to take the actions identified in the letters. He asserted the letters were the only limited contact Familia Kahlo had with Florida. *Id.*

Defendants argued that the acts of Familia Kahlo as a corporation cannot impart personal jurisdiction over Pinedo as an individual. (Doc 29:7). Defendants

---

[4] Defendants also sought to dismiss the declaratory judgment action for lack of subject matter jurisdiction. The district court found it had subject matter jurisdiction and that decision is not at issue on appeal. (Doc 68:5-6).

submitted the affidavit of Pinedo who denied conducting business in Florida or engaging in any significant or ongoing activity in Florida. (Doc 29-1:5). She did not deny that she is an officer and owner of Familia Kahlo, the letters were sent on her personal behalf, she regularly travels throughout the United States individually and on behalf of Familia Kahlo, and she attended exhibitions and events in various states in 2021 and 2022. *Id.*

On February 14, 2023, Plaintiffs filed their response in opposition. (Doc 30:1). Plaintiffs asserted the district court had specific personal jurisdiction over Defendants under the Florida and federal long-arm statutes. (Doc 30:8-9). Plaintiffs relied upon Florida's statutory tortious act provision, section 48.193(1)(a)(2), Florida Statutes, which provides that a nonresident is subject to personal jurisdiction in Florida for any cause of action that arises from committing a tortious act within Florida, whether such tortious act is committed personally or through an agent. They asserted the corporate shield doctrine did not apply to intentional torts and was inapplicable to Pinedo who was personally liable, because she committed tortious acts through her agent, Familia Kahlo, and the cease-and-desist letters were sent on her behalf, as well as on behalf of her company. (Doc 30:9-10).

Plaintiffs further asserted that exercising jurisdiction comported with due process because there were sufficient contacts that arise out of *or relate to* Defendants' contacts with Florida in that the cease-and-desist letters were sent to

10

companies in Florida and relate to Defendants' activities in the U.S. (Doc 30:10-11). They pointed out that Defendants do not deny that they have traveled throughout the U.S. in connection with their own exhibitions. (Doc 30:12). Plaintiffs asserted the letters claimed unsubstantiated rights, threatened suit, and requested the nullity of co-production agreements between FKC and its licensees in Florida and elsewhere in the U.S. Moreover, Defendants actively promoted their own exhibitions throughout the U.S. with their U.S. partners and licensees. The tortious interference and declaratory judgment actions arise out of or relate to Defendants' conduct in sending the letters and promoting their own exhibitions. (Doc 30:13-14). Plaintiffs relied on Federal Rule of Civil Procedure 4(k)(2) in asserting that in determining whether to exercise specific personal jurisdiction for purposes of the due process analysis, the forum was the entire U.S. (Doc 30:14, 16-19).

With their response, Plaintiffs submitted FKC's relevant trademark registration certificates (Doc 30-1). They also submitted the affidavit of Sebastian Aragón Cuahonte, an attorney in Mexico, who attested that the lawsuit filed by Pinedo against FKC in Mexico, seeking an injunction and declaration that she was the owner of the trademark FRIDA KAHLO was dismissed. (Doc 30-2:1). He further attested that all the rights to register and license trademarks of FKC are under the ownership of FKC in Mexico, and Pinedo's submission of a fraudulent affidavit in support of her suit against FKC is at the center of a criminal matter against her in

11

Mexico. (Doc 30-2:2).

In their reply, filed on February 28, 2023, Defendants argued the fact that the letters were sent on behalf of Pinedo was insufficient to establish an exception to the corporate shield doctrine because the acts were performed not for her own benefit, but for the benefit of her employer. (Doc 37:7). They contended that the actions taken by the company could not be conveyed to her as an owner and officer, and the letters could have been sent by Familia Kahlo's general manager without her knowledge. Defendants did not submit evidence that the letters were sent without Pinedo's knowledge or that they did not benefit her personally. (Doc 37:7-8).

Plaintiffs submitted additional evidence in support of their opposition to dismissal on June 29, 2023. (Doc 57). Plaintiffs asserted that there were newly discovered facts concerning Defendants' activities directed to Florida that contradicted and were omitted from Defendants' declarations, in which Durán declared that the cease-and-desist letters at issue were the only limited contact Familia Kahlo had with Florida, and Pinedo declared that she did not conduct any business in Florida in her individual capacity or personally engage in any significant or ongoing activity in Florida. (Doc 57:1-2, citing Doc 12-1; Doc 23-1; Doc 29-1).

The evidence included a June 19, 2023 declaration of Francisco E. Cordero, the majority member of a company that owns a 50% interest in IAP Group LLC ("IAP"), a Florida limited liability company, and a managing member of Break the

Format, LLC ("BTF"), a Florida limited liability company. Cordero declared that these are Florida companies with the same principal address in Coral Gables, Florida. (Doc 57-5:1 (¶ 1); *see also* Doc 57-2; Doc 57-3; Doc 57-4). He further declared that in late December 2022, Durán became a member of IAP and is an agent for Familia Kahlo in its relationship with BTF. (Doc 57-5:4 (¶ 14)). Through option and purchase agreements, Familia Kahlo and Pinedo assigned to IAP the rights relating to Frida Kahlo's name, image, and likeness for production of an audiovisual entertainment series, documentary, and an option to create a feature film. (Doc 57-5:3 (¶ 11)).

Cordero declared that on August 8, 2022, IAP entered into a Joint Venture Agreement relating to the utilization of, and licensing rights to, Frida Kahlo's name and likeness for a staged musical production and stage play. IAP received notices relating to the agreement in Coral Gables, Florida. *Id.* at ¶ 12. BTF also entered into a Collaboration Agreement, on October 20, 2022, which contains a [purported] scrivener's error and mistakenly states that Familia Kahlo attended as a witness. *Id.* at ¶ 13. Cordero further declared that IAP met with Pinedo in New York on two occasions with the first meeting in September 2022 during a "teaser" for the upcoming musical. *Id.* at ¶ 16. Defendants participated in more than 50 meetings and calls with BTF in connection with the agreements. Cordero stated:

> 17.    . . . it is possible that some representatives of
> BTF may have been in Florida and others in Mexico when

they participated in online meetings or conference calls
with Durán and *the Family* on numerous occasions (more
than 50) between February 2022 and the present date. . ..

18.    . . . it is possible that some representatives of
BTF may have been in Florida and others in Mexico when
they participated in online meetings or conference calls
with *Pinedo* on numerous occasions (more than 50)
between February 2022 and the present date.

(Doc 57-5:4 (¶¶ 17, 18) (emphasis added)).

The evidence submitted by Plaintiffs also included a declaration from Duran

dated June 26, 2023, wherein he acknowledges that on May 28, 2022, Familia Kahlo

and IAP entered into a licensing agreement for the right to adapt the book titled Frida

Intima, authored by Isolda, to a dramatic musical. He explained that he found 14

communications, as early as February 2022, between him and BTF relating to that

agreement. (Doc 57-1). This failed to disclose how many email communications

were between Familia Kahlo and BTF, BTF Media LLC, and IAP. (Doc 57:3). This

also contradicted the declaration that the letters were the only limited contact Familia

Kahlo had with Florida, as set forth in his declaration submitted in support of

Defendants' motion to dismiss. (Doc 23-1:3 (¶ 7)).

After serving subpoenas on IAP, BTF Media, and Cordero, Plaintiffs received

six agreements relating to the licensing of the name, image, and likeness of Frida

Kahlo in connection with entertainment services. (Doc 57:3). Plaintiffs asserted the

production reflected that Pinedo, in her individual capacity, and Familia Kahlo

14

executed and are parties to the agreements between IAP or BTF Media and Defendants. Plaintiffs did not receive the page following the execution page of the Collaboration Agreement, which would presumably include witness signatures. Because the Collaboration Agreement identified Familia Kahlo as a witness and Page 9 of 9 of the Collaboration Agreement was not produced, Plaintiffs disagreed there was a "scrivener's error," and asserted Familia Kahlo was a witness. (Doc 57:4). The parties in the electronic signature disclosure created on April 21, 2020, included Pinedo herself, Durán, and Ricardo Jesus Martinez Coeto, an IAP manager, who introduced IAP and BTF to Familia Kahlo. (Doc 57:5, citing Doc 57-2; Doc 57-5:2, 3 (¶¶ 6, 13)).

The new evidence also showed that Defendants sent a cease-and-desist letter, dated July 22, 2022, signed by Duran, aduran@fkahlo.com, as a representative of Familia Kahlo and Pinedo, directed to Loud & Live, a Florida corporation. (Doc 57:6; Doc 57-6; Doc 57-7).

### D.    <u>Order on Appeal</u>

The district court did not hold a hearing on the motion to dismiss. In its Order, the district court found it had personal jurisdiction over Familia Kahlo under the Florida long-arm statute, because Plaintiffs sufficiently alleged that they suffered injury in Florida, as a result of the cease-and-desist letters sent to Plaintiffs' licensees in Florida regarding intellectual property infringement and Defendants tortiously

15

interfered with Plaintiffs' business relationships. (Doc 68:8, citing Doc 14:12-14, 16-17, 18 (¶¶ 40-47, 65, 75-80)).

However, the district court determined that Florida's corporate shield doctrine prevented it from exercising personal jurisdiction over Pinedo. (Doc 68:9). The court thereby rejected Plaintiffs' argument that Pinedo engaged in intentional misconduct in sending the letters for her personal benefit, an exception to Florida's corporate shield doctrine. (Doc 30:9; Doc 68:10).

As to Plaintiffs' argument that Rule 4(k)(2) confers personal jurisdiction over Defendants, the court found that the rule did not apply to Familia Kahlo because it was subject to the court's personal jurisdiction under Florida's long-arm statute. It found that even if Rule 4(k)(2) applied to Pinedo, exercising jurisdiction over her would offend due process because Pinedo's limited and sporadic trips to the United States on behalf of Familia Kahlo did not establish sufficient contacts with the United States "as a whole." (Doc 68:9 n.7, citing *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017)).

The court determined that Plaintiffs failed to establish that exercising personal jurisdiction over Defendants comported with the Due Process Clause. (Doc 68:11). The court applied the minimum contacts test, as opposed to the "effects test" utilized in intentional tort cases, in determining that Plaintiffs did not establish that Defendants purposefully availed themselves of the privilege of conducting activities

16

in the state, thus invoking the benefits and protections of its laws. (Doc 68:11-12). The court determined that sending the cease-and-desist letters, without more, is insufficient to satisfy the requirements of due process when exercising specific personal jurisdiction over a nonresident defendant, citing *Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1125 (M.D. Fla. 2021), and *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998). (Doc 68:12). The court noted that only two of the six cease-and-desist letters were addressed to licensees located in Florida: CIC Media TV and Primo, and that aside from sending the letters, Defendants did not confront Plaintiffs' licensees in Florida, visit Plaintiffs' office in Florida to negotiate trademarks, or engage in any other activities that establish sufficient minimum contacts. (Doc 68:13).

The court further found that Pinedo does not engage in significant or ongoing activity in Florida, is a citizen of Mexico, and does not live, own property, or conduct business in Florida, citing her affidavit, Doc 29-1:5. It also found that Pinedo's travel to Florida on behalf of Familia Kahlo does not establish sufficient minimum contacts for either Defendant. (Doc 68:12). As to Familia Kahlo, the court noted it is a Mexican corporation and found it has no place of business in Florida, citing Durán's affidavit, Doc 29-1:2-3. *Id.* Therefore, the court found that Defendants did not purposefully avail themselves of the privilege of conducting activities within Florida. (Doc 68:13).

The district court also noted that without leave from the court and in violation of Local Rule 7.1(c), Plaintiffs filed two notices of additional evidence related to Defendants' purported activities in the district, communications with unrelated third parties, and additional cease and desist letters, citing Doc 43 and 57. Doc 68:13 n.11. However, the court found that Plaintiffs' claims did not arise from the acts alleged in the additional evidence, noting the First Amended Complaint explicitly alleges that Plaintiffs' claims arise from "Defendants' tortious interference with Frida Kahlo Corporation's licensees in July 2022, and the rights of the parties with respect to the name and image of Frida Kahlo in connection with art exhibitions and phone covers." *Id.* (quoting Doc 14:10 (¶ 25)). The court found that considering the additional evidence, Plaintiffs did not meet their burden of establishing personal jurisdiction over Defendants. *Id.* (citing *Douglas v. Cruise Yacht Op Co.*, No. 21-23980-CIV, 2022 WL 1719312, at *10 (S.D. Fla. May 27, 2022)).

Because the district court found that Plaintiffs could not satisfy the purposeful availment prong of the due process test, it did not address the other two prongs of the test: whether Plaintiffs' claims arise out of Defendants' contacts with the forum, and whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. (Doc 68:12 n.10).

## II.    STANDARD OF REVIEW

The standard of review of an order dismissing an action for lack of personal

jurisdiction is *de novo*. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). In reviewing, this Court accepts as true the allegations in the complaint. If the district court makes any findings of fact in reaching its personal jurisdiction conclusion, this Court reviews those fact findings for clear error. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

The district court correctly found that Florida's long-arm statute applicable to tortious acts was satisfied such that it could exercise specific personal jurisdiction over nonresident Defendant Familia Kahlo, a Mexican corporation. As the court found, Plaintiffs alleged they suffered injury in Florida as a result of cease-and-desist letters sent to Plaintiffs' licensees in Florida regarding intellectual property infringement and Defendants tortiously interfered with Plaintiffs' business relationships in sending the letters.

The district court should have applied the same analysis to nonresident Defendant Pinedo because the letters were also sent on her individual behalf, and she thereby caused the same harm as Familia Kahlo. The district court erred, however, in determining that Florida's corporate shield doctrine prevented it from exercising personal jurisdiction over Pinedo. Florida's corporate shield doctrine did not apply, because Pinedo engaged in intentional misconduct in sending the letters for her personal benefit, an exception to the doctrine. Thus, the court has specific

19

personal jurisdiction over Pinedo under Florida's long-arm statute, and the court erred as a matter of law in finding otherwise.

The district court further erred in determining that Plaintiffs failed to establish that exercising specific personal jurisdiction over Defendants comports with federal due process requirements, because Defendants did not purposefully avail themselves of the privilege of conducting activities in the forum. This was clear error under the "minimum contacts" test employed by the district court and the *Calder* "effects test" applicable to intentional torts, given the allegations in the complaint and evidence. Defendants intentionally interfered with Plaintiffs' business relationships by sending cease and desist letters to Plaintiffs' licensees in Florida, threatening suit if they refused to refrain from participating in any business initiative involving the use of the name or image of Frida Kahlo. This was with the intent to cause the licensees to cease the production and promotion of phone cases and art exhibitions, including exhibitions in Miami, notwithstanding that the trademarks at issue are owned by FKC, not Defendants. Thus, Defendants should have reasonably anticipated that the letters would cause harm in Florida, and they would be haled into court in the forum. Plaintiffs established purposeful availment and exercising jurisdiction comports with federal due process requirements.

Moreover, the district court erred in failing to consider all the contacts that relate to the claim of rights to the name Frida Kahlo under the declaratory judgment

claim. Under Federal Rule of Civil Procedure 4(k)(2), all of Defendants' contacts in the U.S. should have been considered in the due process analysis, not just the cease-and-desist letters giving rise to the tortious interference with business relationships claim. This is because the U.S. Supreme Court and this Court have made clear that the number of contacts must "relate" – not necessarily "give rise" to the action.

In this case, those contacts include Defendants conducting business in the U.S. through its art exhibitions in other states and in its negotiations to enter into licensing agreements with third parties in Florida for the adaptation of Frida Kahlo's biography and production of a musical, audiovisual entertainment series, documentary, and film. Thus, Plaintiffs established that Defendants purposefully availed themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

While the district court did not determine whether Plaintiffs' claims arise out of or are related to Defendants' contacts with the forum, the record reflects that the tortious interference and declaratory judgment claims arise out of or are related to the cease-and-desist letters that Defendants sent to Plaintiffs' licensees in Florida. Defendants' negotiations with Florida companies in the entertainment industry for Frida Kahlo productions also support the declaratory judgment claim. Thus, this prong of the due process test was met. Because Defendants failed to make a compelling case that the exercise of personal jurisdiction violates traditional notions

21

of fair play and substantial justice, the third prong of the due process test is also met. Accordingly, exercising jurisdiction over Defendants comports with due process and the district court reversibly erred in finding otherwise and dismissing the First Amended Complaint.

## **ARGUMENT**

### I.   **The District Court Erred in Dismissing the First Amended Complaint for Lack of Personal Jurisdiction Over Defendants**

The district court erred in granting Defendants' Amended Motion to Dismiss (Doc 29), dismissing Plaintiffs' First Amended Complaint (Doc 14) without prejudice for lack of personal jurisdiction over Defendants (Doc 68).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence to support its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), and must "accept the facts alleged in the complaint as true, to the extent they are

uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514.

The declarations submitted by Defendants do not controvert any of the specific jurisdictional allegations in the First Amended Complaint. At most, Defendants make statements regarding the "purpose" of the cease-and-desist letters, despite the plain language of the letters to the contrary. (Doc 29-1:3 (¶¶ 5-6)). Thus, Defendants' declarations should be given little, if any, weight, and this Court should accept the allegations in the First Amended Complaint as true for the specific personal jurisdiction analysis. This is particularly so given the additional evidence submitted by Plaintiffs, which contradicted Duran's declaration that the cease-and-desist letters at issue were the only limited contact Familia Kahlo had with Florida, and Pinedo's declaration that she did not conduct any business in Florida in her individual capacity or personally engage in any significant or ongoing activity in Florida. The evidence proved otherwise. (Doc 57; Doc 57-1; Doc 57-2; Doc 57-3; Doc 57-4; Doc 57-5; Doc 57-6; Doc 57-7).

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello*, 544 F.3d at 1283. To determine whether to exercise personal jurisdiction, a court considers: (1) whether personal jurisdiction exists over the nonresident defendant under Florida's long-arm statute, and (2) whether exercising jurisdiction violates the Due

Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton*, 736 F.3d at 1350.

The Supreme Court recognizes general and specific personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). Plaintiffs argued the district court has specific jurisdiction over Defendants under Florida's long-arm statutory tortious acts provision, section 48.193(1)(a)(2), Florida Statutes. For specific jurisdiction, a plaintiff's claims must arise out of *or relate to* the defendant's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1032 (2021).

**A.    Personal Jurisdiction Exists Under Florida's Long-Arm Statute**

Florida's long-arm statute provides that a nonresident is subject to personal jurisdiction in Florida for any cause of action that arises from committing a tortious act "personally or through an agent" in Florida. Fla. Stat. § 48.193(1)(a)(2). This Court applies a broad construction of subsection (1)(a)(2) and has consistently held that the physical presence of a defendant in Florida is not required for long-arm jurisdiction, if the plaintiff suffered harm in Florida. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1354; *Licciardello*, 544 F.3d at 1283. This long-arm jurisdiction extends to defendants who commit tortious acts outside the state that causes injury in Florida. *Licciardello*, 544 F.3d at 1283 (citation omitted).

It is well settled in this circuit that trademark claims under the Lanham Act

may constitute tortious acts for long-arm purposes and that out-of-state infringement causing injury in Florida satisfies the statute. *See Louis Vuitton*, 736 F.3d at 1353; *Licciardello*, 544 F.3d at 1283; *Honus Wagner Co. v. Luminary Group LLC*, No. 17-61317-CIV, 2017 U.S. Dist. LEXIS 210097, at *23-26 (S.D. Fla. Dec. 21, 2017) (collecting cases finding long-arm jurisdiction for tortious out-of-state conduct that caused in-state harm).

The district court correctly found that it had personal jurisdiction over Familia Kahlo under the Florida long-arm statute, because Plaintiffs alleged that they suffered injury in Florida as a result of the cease-and-desist letters sent to Plaintiffs' licensees in Florida, regarding intellectual property infringement, and Defendants tortiously interfered with Plaintiffs' business relationships in sending the letters. *See Licciardello*, 544 F.3d at 1283 (holding trademark infringement claim was a tortious act under Florida long-arm statute); *Macrotrend Cap. Grp. Inc. v. Edwards*, No. 18-61327-CIV, 2019 WL 2106421, at *4 (S.D. Fla. Mar. 4, 2019) (analyzing tortious interference claim under Fla. Stat. § 48.193(1)(a)(2)); *Honus Wagner*, 2017 WL 65478 2017 U.S. Dist. LEXIS 21009799, at *27 (finding defendant alleged to infringe on trademarks in Florida, where the owner resides, satisfied Fla. Stat. § 48.193(1)(a)(2)); *HSI IP, Inc. v. Champion Window Mfg. & Supply Co., Inc.*, 510 F. Supp. 2d 948, 954–55 (M.D. Fla. 2007) (finding defendant who allegedly infringed Florida trademark was subject to specific jurisdiction due to commission

of tortious act in Florida in sending cease and desist letter despite lacking other Florida connections).

The same analysis should have been applied to Pinedo because, as the complaint alleged, the letters were also sent on her individual behalf, and she caused the same harm. Pinedo did not deny this in her declaration.

## B.    The District Court Erred in Finding that Florida's Corporate Shield Doctrine Prevented it From Exercising Personal Jurisdiction Over Pinedo

The district court erroneously found that Florida's corporate shield doctrine prevented it from exercising personal jurisdiction over Pinedo under Florida's long-arm statute. Pinedo met the exception to the corporate shield doctrine, because like Familia Kahlo, she committed an intentional tort in Florida and caused harm in Florida.

The corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee." *Kitroser v. Hurt*, 85 So. 3d 1084, 1089 (Fla. 2012); *see also Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (noting a nonresident corporate employee will not be haled into a Florida court by virtue of his position when that individual has not been in Florida). "The rationale behind the corporate shield doctrine is that it may be

unfair to force an individual to defend an action filed against him personally in a

forum with which his only relevant contacts are acts performed totally outside the

forum state and not for his own benefit but for the exclusive benefit of his employer."

*Id.* at 1088. *See also Doe*, 620 So. 2d at 1006.

Florida's corporate shield doctrine "is inapplicable where the corporate officer

commits intentional torts." *Louis Vuitton*, 736 F.3d at 1355 (finding corporate shield

defense to personal jurisdiction failed because plaintiff alleged defendant committed

intentional torts). In *Kitroser*, the Florida Supreme Court explained and held:

> Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant. Jurisdiction properly applies to "any person" who commits torts "within this state." § 48.193, Fla. Stat. (2011). To hold otherwise would be tantamount to providing corporate employees with a form of diplomatic immunity and would abolish the legislative goal inherent in adopting a long-arm jurisdictional statute: to provide an in-state forum to hold those responsible who commit negligent acts in Florida. Florida courts have personal jurisdiction over nonresident defendants whose alleged negligent acts occur in-state irrespective of whether these acts occurred for the benefit of a corporate employer. The plaintiffs allege that the Airgas employees acted tortiously within Florida, and the Airgas employees do not refute these allegations. We conclude, therefore, that the Airgas employees here are subject to the personal jurisdiction of Florida courts pursuant to section 48.193.

*Kitroser*, 85 So. 3d at 1090. *See also Coach, Inc. v. Class Beach Wireless, Ltd. Liab.*

*Co.*, No. 1:12-cv-22748, 2013 U.S. Dist. LEXIS 188923, at *7 (S.D. Fla. Mar. 21,

2013) (holding, "a corporate officer who directs, controls, ratified, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement even when he is acting for the company").

Plaintiffs alleged Pinedo engaged in intentional misconduct in sending the cease-and-desist letters, which reflect that they were sent on her personal behalf, not just on behalf of Familia Kahlo, to Plaintiffs' licensees in Florida. The letters state, "[w]e would like to inform you that our represented, the heiresses of the painter Frida Kahlo" and "in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo." (Doc 14:13 (¶ 42); Doc 29-2:2-3, 84-85, 166-67). While Defendants argued that the letters could have been sent by Familia Kahlo's general manager Durán without Pinedo's knowledge, neither Durán nor Pinedo made any such declarations and Defendants did not submit evidence supporting their argument, which is contrary to the plain language of the letters.

"[A] non-resident defendant may commit a tortious act within the state and be subject to personal jurisdiction, through an electronic, written, or telephonic communication into Florida so long as the plaintiff's cause of action arises from that communication." *Don King Prods. v. Mosley*, No. 15-61717-CV-WILLIAMS, 2016 U.S. Dist. LEXIS 188060, at *8-9 (S.D. Fla. Jan. 26, 2016) (citing *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002)); *see also Macrotrend*, 2019 WL 2106421, at *4 (similarly holding; finding defendant committed a tort causing injury in Florida

that satisfies the long-arm statute by sending defamatory e-mails to Florida companies). Thus, for purposes of the statute, the defendant does not have to be physically present in Florida for the tortious act to occur "within" the state. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir. 2009).

Pinedo tortiously and intentionally interfered with Plaintiffs' business relationships with their licensees by misrepresenting in letters sent on her personal behalf that Defendants are the rightful owners of the name and image of Frida Kahlo and other trademarks used in connection with the exhibitions, including an exhibition in Miami. The letters were for Pinedo's personal benefit as an owner of Familia Kahlo, and she caused the same harm that Familia Kahlo caused to Plaintiffs and their licensees in Florida. The letters were sent with the knowledge that FKC owns the trademarks at issue. Thus, Plaintiffs allegations went unchallenged, and Florida's corporate shield doctrine is inapplicable. The district court clearly erred in finding otherwise.

Moreover, because the declaratory judgment claim arises under the Lanham Act, as to that claim, as argued below in C.1.(b), the appropriate forum for the due process analysis is the entire United States, not Florida, and sufficient contacts with the United States as a whole were alleged.

## C.  <u>Exercising Personal Jurisdiction Over Defendants Comports with Due Process Requirements</u>

The district court further erred in finding that Plaintiffs failed to establish that

exercising personal jurisdiction over Defendants comported with due process. In specific personal jurisdiction cases, the court applies a three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum's state's laws, and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. The plaintiff bears the burden of establishing the first two prongs, and if it does so, the defendant "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3D 1249, 1267 (11th Cir. 2010)).

The district court erred in determining that Plaintiffs did not establish the purposeful availment prong of the due process test. Plaintiffs established all three prongs of the due process test, requiring reversal.

## 1.    Prong Two: Purposeful Availment

The second prong of the due process test was satisfied, and the district court clearly erred in finding to the contrary. In intentional tort cases, there are two tests for determining whether this prong is met. A court may apply the "effects test," articulated in *Calder v. Jones*, 465 U.S. 783 (1984) (upholding jurisdiction of

California court over Florida defendants based on allegedly libelous effect of Florida conduct which was calculated to cause injury to plaintiff in California). A court may also apply the "minimum contacts" test. *Louis Vuitton*, 736 F.3d at 1356-57, citing *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (applying minimum contacts test in case involving intentional tort claims of securities fraud). Circuit courts have applied the "minimum contacts" test in lieu of, or in addition to, the "effects test" in cases involving trademark-related intentional torts. *Id.* at 1356 (citations omitted). Both tests are met here.

### (a)    Purposeful availment under "minimum contacts" test

Under the "minimum contacts" test, the court assesses the defendant's contacts with the forum and asks whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed itself of the privileges of doing business within the forum; and, (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton*, 736 F.3d at 1357 (citing *Carrillo*, 115 F. 3d at 1542)).

The district court applied the "minimum contacts" test and found that sending an infringement letter, *without more*, is insufficient to satisfy the requirements of due process when exercising specific personal jurisdiction over a nonresident defendant, citing *Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1125 (M.D. Fla. 2021). (Doc 68:12). This ignored that the *Healthe* court went on to

31

state:

> But there is no general rule that a "letter charging
> infringement can never provide specific jurisdiction." For
> example, attempts at "extra-judicial patent enforcement,"
> targeted at a plaintiff's business activities, "go beyond
> simply informing the accused infringer of the patentee's
> allegations of infringement" and can give rise to personal
> jurisdiction.

> Here, had Defendants simply sent a letter asserting
> a good-faith claim of infringement to Plaintiff, those
> contacts would not give rise to personal jurisdiction. But
> according to Plaintiff's uncontroverted allegations,
> Defendants sent a threatening letter in bad faith to one of
> Plaintiff's customers in Florida that not only baselessly
> asserted patent infringement but also demanded the
> customer respond to the letter "in regards to your
> intentions within twenty (20) days" about the customer's
> planned purchases of Healthe UV Products. This demand
> goes beyond informing others of potential patent
> infringement and is instead an alleged bad-faith attempt at
> "extra-judicial patent enforcement"—interfering with
> Plaintiff's customers and trying to collect information
> about a competitor's business. As Plaintiff successfully
> alleged Defendants targeted Plaintiff and customers in
> Florida with tortious letters and that Defendants tried to
> extra-judicially enforce their patents in Florida with those
> letters, Plaintiff has shown a prima facie case for personal
> jurisdiction. Defendants' motion to dismiss for lack of
> personal jurisdiction is denied.

*Id.* at 1125-26 (internal citations omitted).

*Healthe* is on point and demonstrates that exercising jurisdiction here

comports with due process because Defendants intentionally interfered with

Plaintiffs' business relationships by purposefully directing their cease-and-desist

32

letters to Plaintiffs' licensees in Florida, threatening suit if they refused to refrain from participating in any business initiative involving the use of the name or image of Frida Kahlo. This was with the intent to cause the licensees to cease the production and promotion of phone cases and art exhibitions, including exhibitions in Miami, notwithstanding FKC's ownership of the trademarks at issue. (Doc 14: 11, 12-13 (¶¶33, 40)). Defendants did not dispute that they sent the letters. (Doc 29-1:3 (¶5)). Plaintiffs' offices are also in Miami, as reflected on the website where the Miami exhibition tickets were available for purchase, and Defendants did not deny that they were aware of this. (Doc 14:3, 12 (¶¶ 8-10, 12, 36-38)). The letters are sufficient to establish the necessary minimum contacts and that Defendants should have reasonably anticipated being haled into court in Florida, thereby establishing purposeful availment.

The district court's reliance on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998), in finding that "Defendants' four [cease-and-desist] letters are insufficient to establish minimum contacts with Florida without any additional steps by Defendants to purposefully avail themselves of the privilege of doing business in Florida," (Doc 68:12), was misplaced. In *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021), the Federal Circuit "concluded that in the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal

jurisdiction." *Id.* at 1155 (citing *Jack Henry & Assocs., Inc. v. Plano Encryption Tech. LLC*, 910 F.3d 1199, 1202 (Fed. Cir. 2018) (letters accusing banks of "infringement" and referencing other lawsuits while inviting recipients of letters to become licensees met the minimum contacts requirement without offending due process)).

The Federal Circuit stated that it "rejected 'the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action,' explaining that *Red Wing* and its progeny 'did not create such a rule.'" *Id.* (citing *Jack Henry*, 910 F.3d at 1206). The Federal Circuit went on to state that it "reaffirmed this view of *Red Wing* and its progeny in *Genetic Veterinary Sciences, Inc. v. LABOKLIN, GmbH & Co. KG*, 933 F.3d 1302, 1312 (Fed. Cir. 2019)). *Id.* The Federal Circuit further stated, "the Supreme Court has held that communications sent into a state may create specific personal jurisdiction, depending on the nature and scope of such communications." *Id.* (citations omitted).

In this case, unlike *Red Wing* and its progeny, the nature and scope of Defendants' communications evidence that Defendants go beyond merely informing others of their purported intellectual property rights, and do not simply attempt to wrongfully enforce their purported trademark rights. Rather, Defendants seek to nullify the agreements between Plaintiffs and Plaintiffs' licensees and threaten litigation. Indeed, the letters themselves are tortious, because Defendants purported

to own trademarks that were actually owned by FKC. The letters and communications are also related to the claim for declaratory judgment because they relate to the trademarks at issue in that claim. Further, while the district court found that "four letters" were insufficient, the complaint alleges that six letters were sent, two of which were sent to companies in Florida. (Doc 14:12-14 (¶¶ 40, 48)). Defendants did not dispute the allegation. A seventh letter directed to a Florida corporation was submitted as additional evidence. (Doc 57:6; Doc 57-6; Doc 57-7). Moreover, Defendants engaged their own partners and licensees in the United States. (Doc 57:3-5; Doc 57-2; Doc 57-5:2-5 (¶¶ 6, 11-13, 16-18)).

Defendants' communications directed at the United States and Florida are sufficient to establish personal jurisdiction. *See Licciardello*, 544 F.3d at 1285 (Intentional torts may support the exercise of personal jurisdiction over a nonresident defendant who has no other contacts with the forum.); *Trimble*, 997 F.3d at 1155; *Genetic Veterinary*, 933 F.3d at 1310-11.

### (b)    The applicable forum is the United States

The district court did not address whether the applicable forum for purposes of the due process analysis was Florida or the United States as a whole. It found that Rule 4(k)(2) did not apply to Familia Kahlo because it was subject to the court's personal jurisdiction under Florida's long-arm statute, but then later ruled that Familia Kahlo was not subject to personal jurisdiction because of due process

35

requirements which apply under Florida and federal law. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 501-02 (Fla. 1989) (holding there is no jurisdiction over a foreign corporation, unless it had minimum contacts with the state sufficient to satisfy the federal constitutional requirement of due process and met the requirements of the state's long-arm statute). The court did not determine whether the rule applied to Pinedo, because it erroneously found that her contacts with the U.S. were insufficient to exercise personal jurisdiction over her. (Doc 68:9 n.7). Rule 4(k)(2) applied to the due process analysis for specific jurisdiction and to the extent the district court determined otherwise and failed to consider all the contacts that relate to the claim of rights to the name Frida Kahlo under the declaratory judgment action, the court erred as a matter of law.

In the Eleventh Circuit, "the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process." *Carrillo*, 115 F.3d at 1544. The national contacts approach followed in this circuit is supported by Rule 4(k)(2), which provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
>> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

36

*See Carrillo*, 115 F.3d at 1543-44 ("Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the … long-arm statute of any particular state." (citation omitted)); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009) ("Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process[.]"; applying Rule 4(k)(2)'s due process analysis because patent claim undisputedly arises under federal law).

After a plaintiff makes a prima facie case establishing personal jurisdiction, a defendant has the burden under a Rule 4(k)(2) analysis to show (i) that one or more states exist in which it would be subject to suit, or (ii) that its contacts with the entire U.S. are constitutionally insufficient. *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2008 U.S. Dist. LEXIS 88922, at *21-22 (S.D. Fla. Oct. 20, 2008) ("[I]t is the defendant who must show that: either its contacts with the whole of the United States are constitutionally insufficient, or that there is an alternative state where jurisdiction would be proper." (citations omitted)).

The declaratory judgment action, regarding the parties' trademark rights and that of FKC's licensees, arises under federal law, The Lanham Act. Thus, the district

37

court should have considered all contacts with the United States in its due process analysis as set forth in the foregoing authority. Because Defendants did not identify any other state in which they would be subject to suit, or that its contacts with the entire U.S. are constitutionally insufficient (Doc 29:14-15), exercising jurisdiction in Florida is appropriate.

This case is similar to *Genetic Veterinary Sciences*, 933 F.3d 1302, where the defendant's act of sending a single cease-and-desist letter directed to a potential infringer in Washington, coupled with the defendant entering into licensing agreements in other states satisfied due process requirements for specific jurisdiction under Rule 4(k)(2). *Id.* at 1310-11 (affirming the district court's holding that specific personal jurisdiction exists under Rule 4(k)(2) where defendant sent a single cease-and-desist letter into Washington and engaged in sublicensing in California and Michigan).

In the instant case, like the defendant licensor in *Genetic Veterinary*, Defendants not only sent cease and desist letters into Florida and elsewhere in the U.S., but also co-produced and licensed their purported rights for exhibitions in the U.S. (Doc 14:6 (¶ 19)) (Defendants "worked for a year to help produce Immersive Frida Kahlo"). The allegations show Defendants openly authorized others to use Defendants' purported rights throughout the U.S. (Doc 14:4-10 (¶¶ 16-24)). The allegations include that Defendants were in partnerships or agreements with U.S.

38

entities. (Doc 14:5 (¶ 18) ("in partnership with Kahlo's family members); *Id.* at 7 ¶ 19 ("artists-family-signs-immersive-frida-kahlo")). Defendants' use of the FRIDA KAHLO trademark in connection with exhibitions relates to the claims in this lawsuit. Further, Defendants, have physically traveled into the U.S. to promote and launch such licensed exhibitions and activities. (Doc 14:4-10 (¶¶ 16-24)). Defendants do not deny that they have traveled throughout the U.S. launching Immersive Frida Kahlo and other licensed events. Nor do they rebut that they have entered into license or partnership agreements in the U.S. Rather, Defendants argue that they are merely attending events, (Doc 29:5), completely ignoring that Defendants have co-produced, partnered in, or licensed such events. All of Defendants' U.S. activities relate to use of the Frida Kahlo name in connection with exhibitions in the U.S.

Further, Defendants attempted to register trademarks and failed to appear to defend their purported rights in proceedings in front of the Trademark Trial and Appeal Board. (Doc 14:15-16 (¶¶ 59-60)). Defendants' Florida trademark attorneys withdrew after the filing of that lawsuit. (Doc 30-3). Defendants did not deny these allegations. Instead, Defendants use the U.S. forum to conduct their business activities, applying for rights they cannot obtain, enforcing rights that they do not have, tortiously interfering with relationships between Plaintiffs and Plaintiffs' licensees while attempting to shield themselves from any federal court or

administrative body. Because Plaintiffs' claims arise from Defendants' contacts with Florida and relate to Defendants' additional contacts in the U.S., due process requirements under Rule 4(k)(2) are satisfied.

### (c)    Purposeful availment under "effects test"

Under the "effects test," a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state, but only where the tort: (1) [was] intentional; (2) [was] aimed at the forum state, and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Louis Vuitton*, 736 F.3d at 1356 (citing *Licciardello*, 544 F.3d at 1285-86, 1287-88). The "effects test" provides an additional means, unavailable in contract cases, of determining the appropriateness of personal jurisdiction — one that is based on a plaintiff's ties to the forum and the harm suffered by the plaintiff. The test does not, however, supplant the traditional minimum contacts test for purposeful availment applicable in tort cases. *Id.* at 1357.

As applied to tortious interference claims, the "effects test" requires a determination of whether the alleged tortfeasor expressly aimed their out-of-state conduct at the forum, requiring a focus on the nexus between the forum and the injured contractual relationship. *See Brennan v. Roman Catholic Diocese of Syracuse New York*, 322 Fed. Appx. 852, 856 (11th Cir. 2009) (unpublished) ("The 'effects' test provides that due process is satisfied when the plaintiff brings suit in

the forum where the 'effects' or 'brunt of the harm' caused by the defendant's intentional tortious activity was suffered.") (citing *Licciardello*, 544 F.3d at 1285-87 (holding that the commission of an intentional tort by a nonresident expressly aimed at a resident, the effects of which were suffered by the resident in the forum, satisfied the "effects" test established in *Calder*)).

The test is met here because Defendants were aware that Plaintiffs and their licensees were in Florida and as the district court found, Plaintiffs suffered injury in Florida because the letters were sent to some of Plaintiffs' licensees in Florida regarding intellectual property rights. (Doc 68:8).

### 2.    Prong One: Arising Out of or Relatedness

Turning to the first prong of the due process test, this Court recently explained that the Supreme Court "rejected the contention that specific jurisdiction may attach only when the defendant's forum conduct directly gave rise to the plaintiff's claims." *Valle v. Trivago GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (citing *Ford Motor Co.*, 141 S. Ct. at 1026-27 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.")). "[D]irect causation between the nonresident's forum contacts and the plaintiff's cause of action is not required." *Id.* at 1276. Rather, the claims need only have a connection with or "relate to" defendant's contacts with the forum. *Id.*; *Ford Motor*, 141 S. Ct. at 1026.

41

The tortious interference and declaratory judgment claims arise out of or relate to Defendants' communications into Florida and Defendants' activities in the U.S. Familia Kahlo admits that it sent cease and desist letters to companies in Florida. (Doc 29-1:3 (¶ 5)). In those letters, Defendants ask Plaintiffs' licensees to "refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo." (Doc 29-2: 3, 85, 167; Doc 14:11-14 (¶¶ 33, 40-48, 50)). Defendants also threaten to hold Plaintiffs' licensees "jointly and severally liable for damages," (Doc 29-2:3, 85, 167; Doc 14:12-13 ¶ 40), stating that Defendants have requested the "nullity of any association or co-production agreements" between Frida Kahlo Corporation and others, (Doc 29-2:2, 84, 166; Doc 14:15 (¶ 51)). None of the letters sent by Defendants include any copy of any registration or evidence of ownership of their purported intellectual property rights. (Doc 14:15 (¶ 52)). Defendants do not deny that they have traveled throughout the U.S. in connection with their own exhibitions. (Doc 14:4-10 (¶¶ 16-24); Doc 68:1). Moreover, the harm was in Florida where Plaintiffs and some of their licensees are located. Thus, the first prong is easily satisfied.

### 3.    Prong Three: Fair Play and Substantial Justice

Because Plaintiffs established the first and second prongs of the due process test, Defendants had the burden to present "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."

42

*Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). Defendants made no such showing.

Under this prong, courts consider: (i) the burden on the defendant of litigating in the forum, (ii) the forum's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, and (iv) the judicial system's interest in resolving the dispute. *Licciardello*, 544 F.3d at 1284.

First, Defendants argued that because they are citizens of and domiciled in Mexico, the burden for them to litigate in another country is great, (Doc 29:13), all the while admitting and arguing that they have initiated lawsuits in other countries. (Doc 29-1:6 (¶¶ 15, 19)). Further, Defendants did not deny or rebut that, in 2022, Defendants traveled to Chicago, New York, Houston, Los Angeles, San Francisco, Denver, Dallas, Boston, and San Antonio. (Doc 14:4-10 (¶¶ 17-24)). Additionally, Defendants do not proffer any evidence suggesting that it would be a burden on them to defend against this lawsuit in Florida. Thus, Defendants' argument relating to their burden of litigating in Florida is not compelling. *See Macrotrend Cap. Grp., Inc. v. Edwards*, No. 18-cv-61327-DIMITROULEAS/S, 2019 U.S. Dist. LEXIS 85791, at *18 (S.D. Fla. Mar. 4, 2019).

Second, Defendants do not provide any authority or evidence to support their argument that the suit would be of little use to Florida in terms of economic impact

43

or impact on Florida citizens. (Doc 29:13). Defendants do not rebut that one of the exhibitions that they sought to shut down was in Miami, available through Plaintiffs' site showing contact information with a Miami phone number. (Doc 14:12 (¶¶ 36-38)). The district court has a substantial interest in adjudicating this dispute because Defendants have threatened litigation against Plaintiffs' licensees, incorporated in Florida. *See Jack Henry*, 910 F.3d at 1206. Florida also has a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents. *See Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 776 (1984) ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tort-feasor shall be liable for damages which are the proximate result of his tort." (citations omitted)); *Licciardello*, 544 F.3d at 1286 (relying on *Keeton* for same proposition); *Macrotrend*, 2019 U.S. Dist. LEXIS 85791, at *18-19 ("Florida has a substantial interest in addressing intentional torts allegedly caused by nonresidents against Florida residents." (citations omitted)).

Third, Plaintiffs clearly have a strong interest in obtaining relief in Florida given their principal place of business is in Florida and had a scheduled exhibition in Miami through a licensee incorporated in Florida. Additionally, because the issues here involve trademark rights and licensing, Plaintiffs have an interest in obtaining

convenient and effective relief.

Fourth, Defendants have taken matters into their own hands by pre-emptively attempting to enforce rights and judgments that they do not have in the U.S., while arguing that no state has personal jurisdiction over them. The interstate judicial system has an interest in obtaining the most efficient resolution of this controversy, which continues without resolution in any other jurisdiction. Thus, the exercise of personal jurisdiction comports with fair play and substantial justice.

## CONCLUSION

Based on the foregoing, this Court should reverse and remand for further proceedings on the First Amended Complaint.

Date: May 24, 2024

Respectfully submitted,

By: */s/ Cristina Alonso*
    CRISTINA ALONSO
    Florida Bar No. 327580
    alonso@alonsoappeals.com
    ALONSO APPEALS
    2020 Ponce de Leon Blvd., Suite 1005B
    Coral Gables, FL 33134
    Telephone: (954) 667-8675

    and
    Darlene Barron
    Florida Bar No. 108873
    dbarron@avilalaw.com
    William R. Trueba, Jr.
    Florida Bar No. 117544
    wtrueba@avilalaw.com

45

AVILA RODRIGUEZ HERNANDEZ
MENA & GARRO LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134-6049
Telephone: (786) 594-4103

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney hereby certifies that this brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,446 words.

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), because this brief uses Times New Roman 14-point font. This brief also complies with 11th Cir. R. 32-4.

*/s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com

47

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and is being served on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF on May 24, 2024, including:

Joanna Andrade Lehmann, Esq.
Oscar A. Gomez, Esq.
EPGD ATTORNEYS AT LAW, P.A.
777 SW 37th Avenue, Suite 510
Miami, Florida 33135
Joanna@epgdlaw.com
Oscar@epgdlaw.com
*Counsel for Appellees-Defendants*

By: */s/ Cristina Alonso*
      CRISTINA ALONSO
      Florida Bar No. 327580