Case No. 24-10293-C

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

FRIDA KAHLO CORPORATION, a Panamanian corporation, and
FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation,

*Appellants-Plaintiffs*,

v.

MARA CRISTINA TERESA ROMEO PINEDO, an individual, and
FAMILIA KAHLO S.A. DE C.V., a Mexican corporation,

*Appellees-Defendants*.

---

On Appeal from the United States
District Court for the Southern District of Florida
Case No. 1:22-cv-22399-DPG

---

## ANSWER BRIEF OF APPELLEES

---

Joanna Andrade-Lehmann
Florida Bar No.: 1014578
joanna@epgdlaw.com
EPGD ATTORNEYS AT LAW, P.A.
777 SW 37th Ave., Ste. 510
Miami, Florida 33135
Telephone: (786) 837-6787
*Counsel for Appellees-Defendants*

**Frida Kahlo Corporation et. al., v. Mara Cristina Teresa Romeo Pinedo, et. al.**
**Appellate Case No. 24-10293-C**

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rules of Appellate Procedure 26.1 and the United States Court of Appeals for the Eleventh Circuit's Rules 26.1-1 through 26.1-3, Appellees-Defendants, Mara Cristina Teresa Romeo Pinedo and Familia Kahlo S.A. de C.V., hereby certify that the following are trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this particular case on appeal:

1. Alonso, Cristina, Esq. – Counsel for Appellants-Plaintiffs

2. Andrade-Lehmann, Joanna, Counsel for Appellees-Defendants

3. Avila, Rodriguez, Hernandez, Mena & Garro LLP – Counsel for Appellants-Plaintiffs

4. Barron, Darlene, Esq. – Counsel for Appellants-Plaintiffs

5. Cristina Alonso, P.L.L.C. d/b/a Alonso Appeals – Counsel for Appellants-Defendants

6. EPGD Attorneys at Law, P.A. – Counsel for Appellees-Defendants

7. Familia Kahlo S.A. de C.V., a Mexican corporation – Appellee-Defendant

8. Frida Kahlo Corporation, a Panamanian corporation – Appellant-Plaintiff

9. Frida Kahlo Investments, S.A., a Panamanian corporation – Appellant-Plaintiff

**Frida Kahlo Corporation et. al., v. Mara Cristina Teresa Romeo Pinedo, et. al.**
**Appellate Case No. 24-10293-C**

10. Gayles, Hon. Darrin P. – Judge, United States District Court for the Southern District of Florida

11. Gomez, Oscar A., Esq. – Counsel for Appellees-Defendants

12. Pinedo, Mara Cristina Teresa Romeo, a Mexican citizen – Appellee-Defendant

13. Romeo, Frida Hentschel – a Mexican citizen

14. Romeo, Mara de Anda – a Mexican citizen

15. Suarez, Roberto M. – Counsel for Appellants-Plaintiffs

16. Torres, Hon. Edwin G. – Magistrate Judge, United States District Court for the Southern District of Florida

17. Trueba Jr., William R. – Counsel for Appellants-Plaintiffs

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Familia Kahlo, S.A. de C.V. is a nongovernmental Mexican corporation, with no parent company. Additionally, no publicly traded company or corporation owns ten percent or more of Familia Kahlo, S.A. de C.V.

Dated: July 24, 2024.

Respectfully submitted,

*/s/ Joanna Andrade-Lehmann*
Joanna Andrade-Lehmann, Esq.
Florida Bar No. 1014578
*Counsel for Appellees-Defendants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees-Defendants respectfully submit that oral argument is not necessary for this appeal. The district court's ruling is based on well-established and controlling statutory and case law, and the facts and legal arguments are thoroughly presented in the briefs and record. Therefore, Defendants believe that oral arguments would not significantly aid the Court in its decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................... C-1 of 2

CORPORATE DISCLOSURE STATEMENT ............................................ C-2 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ......................................................................................iv

JURISDICTIONAL STATEMENT ...........................................................................x

STATEMENT OF THE ISSUES ..............................................................................1

STATEMENT OF THE CASE ...................................................................................1

    I.    STATEMENT OF FACTS .......................................................................2

        A.  Background ..........................................................................................3

        B.  The Cease-and-Desist Letters ....................................................5

        C.  The Current Lawsuit ....................................................................6

        D.  The Order on Appeal ...................................................................10

    II.  STANDARD OF REVIEW .......................................................................13

SUMMARY OF THE ARGUMENT ....................................................................13

ARGUMENT ............................................................................................................16

I.    The Order Dismissing the FAC for Lack of Personal Jurisdiction Over Defendants Should be Affirmed Because No Personal Jurisdiction Under the Florida Long-Arm Statute Exists Over Pinedo due to the Corporate Shield

Doctrine, And Exercising Jurisdiction Over Defendants Would Violate the Due Process Clause. .................................................................................................16

   A.   The District Court Correctly Held That Pinedo is Not Subject to Personal Jurisdiction Under the Florida Long-Arm Statute, As She is Protected by the Corporate Shield Doctrine. ..............................................................................17

   B.   Exercising Personal Jurisdiction Over the Defendants Would Violate the Due Process Clause of the Fourteenth Amendment. ........................................24

      1.  Purposeful Availment .......................................................................25

        a. Purposeful availment under the "minimum contacts" test..............26

           i.   Defendants' contacts with the forum state are not related to Plaintiffs' causes of action............................................................27

           ii.  Defendants did not purposefully avail themselves of the privilege of conducting activities in Florida...................................29

           iii. Defendants should not reasonably anticipate being haled into court in Florida ................................................................................36

        b. Rule 4(k)(2) does not apply to Pinedo ...........................................36

        c. Purposeful availment under the "effects test"................................39

      2.  Arising Out of or Relatedness............................................................42

      3.  Fair Play and Substantial Justice ......................................................43

CONCLUSION ......................................................................................................49

CERTIFICATE OF COMPLIANCE .....................................................................50

CERTIFICATE OF SERVICE................................................................................51

## <u>TABLE OF CITATIONS</u>

### Cases

*Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.*,

    552 F.3d 1324 (Fed. Cir. 2008)...........................................................44

*Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*,

    444 F.3d 1356 (Fed. Cir. 2006)....................................................passim

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985).........................................................25, 27, 32, 45

*Calder v. Jones*,

    465 U.S. 783 (1984).........................................................................39

*Campbell Pet Co. v. Miale*,

    542 F.3d 879 (Fed. Cir. 2008)...........................................................31

*Coach, Inc. v. Class Beach Wireless, LLC*, No. 1:12-CV-22748,

    2013 WL 12095144  (S.D. Fla. Mar. 21, 2013)...................................19

*Doe v. Thompson*,

    620 So. 2d 1004 (Fla. 1993)..............................................................19

*Force Ten, Inc. v. Trenditions, LLC*, No. 05-61694-CIV,

    2006 WL 8432499 (S.D. Fla. Mar. 31, 2006)....................................41

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

    592 U.S. 351 (2021)..........................................................................27

*Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*,

19 F.3d 624 (11th Cir. 1994) .................................................................27

*Fraser v. Smith,*

594 F.3d 842 (11th Cir. 2010) ...............................................................42

*Frehling Enters., Inc. v. Int'l Select Group, Inc.,*

192 F.3d 1330 (11th Cir. 1999) .............................................................13

*Futuristic Fences, Inc. v. Illusion Fence, Corp.*,

558 F. Supp. 2d 1270 (S.D. Fla. Apr. 3, 2008) .....................................30

*Giuliani v. NCL (Bahamas) Ltd.*,

558 F. Supp. 3d 1230 (S.D. Fla. 2021) ..................................................36

*Guzman v. Cruise Yacht Op Co. Ltd*, No. 22-CV-21123,

2023 WL 2572220 (S.D. Fla. Mar. 20, 2023).......................................24

*Healthe, Inc. v. High Energy Ozone LLC*,

533 F. Supp. 3d 1120 (M.D. Fla. 2021).........................................33, 34

*Hildebrand v. Steck Mfg. Co., Inc.*,

279 F.3d 1351 (Fed. Cir. 2002)..............................................................31

*Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,*

421 F.3d 1162 (11th Cir. 2005) ..............................................................17

*Impact Productions, Inc. v. Impact Productions, LLC*,

341 F. Supp. 2d 1186 (D. Col. 2004)...............................................30, 40

*Inamed Corp. v. Kuzmak*,

    249 F.3d 1356 (Fed. Cir. 2001)..............................................................31

*Inetianbor v. Cashcall, Inc.,* No. 13-60066-CIV,

    2016 WL 4250644 (S.D. Fla. Apr. 5, 2016) ........................................19

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,

    326 U.S. 310 (1945)......................................................................28, 42

*iSocial Media Inc. v. bwin.party Digital Ent. PLC*, No. 12-81278-CIV-HURLEY,

    2013 WL 5588238 (S.D. Fla. Oct. 10, 2013)..................................30, 36

*Kitroser v. Hurt*,

    85 So. 3d 1084 (Fla. 2012)....................................................................18

*Licciardello v. Lovelady*,

    544 F.3d 1280 (11th Cir. 2008) ............................................................18

*Louis Vuitton Malletier, S.A. v. Mosseri*,

    736 F.3d 1339 (11th Cir. 2013) ...............................................19, 25, 26

*Macrotrend Cap. Grp. Inc. v. Edwards*, No. 18-CV-61327,

    2019 WL 2106421 (S.D. Fla. Mar. 4, 2019).......................................46

*McCullough v. Royal Caribbean Cruises, Ltd.*,

    268 F. Supp. 3d 1336 (S.D. Fla. 2017) ................................................39

*Melgarejo v. Pycsa Panama, S.A.*, No. 11-81138-CIV,

    2012 WL 12894733 (S.D. Fla. Aug. 15, 2012)..................................47

*My PI, LLC v. My Pie Int'l, Inc.*, No. 14-62394-CIV,

    2015 WL 11199823 (S.D. Fla. June 9, 2015) .................................................29, 32

*Oldfield v. Pueblo De Bahia Lora, S.A.*,

    558 F.3d 1210 (11th Cir. 2009) .......................................................38, 39

*Posner v. Essex Ins. Co., Ltd.*,

    178 F.3d 1209 (11th Cir. 1999) .......................................................16, 17

*Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-426-CIV,

    2018 WL 4381196 (M.D. Fla. July 31, 2018) ....................................................24

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,

    148 F.3d 1355 (Fed. Cir. 1998)........................................................passim

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,

    362 F. Supp. 3d 1226 (M.D. Fla. 2019) ...............................................41

*Silent Drive, Inc. v. Strong Indus., Inc.*,

    326 F.3d 1194 (Fed. Cir. 2003).........................................................31

*SkyHop Techs., Inc. v. Narra*,

    58 F.4th 1211 (11th Cir. 2023) .........................................................13

*Snow v. DirecTV, Inc.*,

    450 F.3d 1314 (11th Cir. 2006) ........................................................21

*State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*,

    869 So. 2d 592 (Fla. 1st DCA 2004) ......................................................19, 20, 23

*Stroman Realty Inc. v. Antt*,

    528 F. 3d 382 (5th Cir. 2008) .................................................36

*Thompson v. Carnival Corp.*,

    174 F. Supp. 3d 1327 (S.D. Fla. 2016) ................................36

*U.S. S.E.C. v. Carrillo*,

    115 F.3d 1540 (11th Cir. 1997) ....................................26, 29

*United Credit Recovery, LLC v. Bexten*, No. 6:11-CV-1714-ORL-31,

    2012 WL 750299 (M.D. Fla. Mar. 7, 2012) .......................19

*Walden v. Fiore*,

    571 U.S. 277 (2014) ....................................................39, 42

*Weinstock v. Abu Marzook*,

    2019 WL 1470245 (S.D. Fla. Apr. 3, 2019) .......................37

*Wolf v. Celebrity Cruises*, Inc.,

    683 F. App'x 786 (11th Cir. 2017) ....................................17

*World–Wide Volkswagen Corp. v. Woodson*,

    444 U.S. 286 (1980).............................................................38

## Statutes

§ 48.193, Florida Statutes.......................................................17

28 U.S.C. § 1291 .....................................................................vi

28 U.S.C. § 2201 .................................................................vi, 2

## Rules

Fed. R. Civ. P. 4(k)(2) .........................................................................passim

Rule 7.1(c), Local Rules, Southern District of Florida ....................................10, 32

## JURISDICTIONAL STATEMENT

Appellants-Plaintiffs, Frida Kahlo Corporation ("FKC") and Frida Kahlo Investments, S.A., both Panamanian corporations (collectively, "Plaintiffs"), brought this action against Appellees-Defendants, Familia Kahlo S.A. de C.V., a Mexican corporation ("Familia Kahlo"), and Mara Cristina Teresa Romeo Pinedo, a Mexican citizen ("Pinedo") (collectively "Defendants"). (Doc. 14).[1] Plaintiffs' First Amended Complaint ("FAC") alleges tortious interference with an advantageous business relationship under Florida law and seeks a declaratory judgment under 28 U.S.C. § 2201 regarding the parties' rights to use the trademarks at issue in connection with art exhibitions and phone covers and to use the images of Magdalena Carmen Frida Kahlo y Calderon ("Frida Kahlo"). *Id.*

On December 28, 2023, the district court found it had subject matter jurisdiction over the claims in the FAC. (Doc. 68:5-6). However, the district court dismissed the FAC without prejudice for lack of personal jurisdiction over the Defendants. *Id.* at 6-13. Plaintiffs filed the Notice of Appeal on January 26, 2024. (Doc. 69). This Court has jurisdiction over this appeal because it was taken from a final judgment. *See* 28 U.S.C. § 1291.

---

[1] Defendants hereby make references to the record below, as follows: document number, page number, and paragraph number, if any: (Doc. [No.]:[Page No.] ¶ [Paragraph No.]).

## STATEMENT OF THE ISSUES

1. Whether the district court correctly granted Appellees-Defendants' Amended Motion to Dismiss, thereby dismissing Appellants-Plaintiffs' First Amended Complaint without prejudice for lack of personal jurisdiction over the Appellees-Defendants.

2. Whether the district court correctly determined that it did not have specific personal jurisdiction over Appellee-Defendant Pinedo, an owner and officer of Appellee-Defendant Familia Kahlo, under Florida's long-arm statute due to the application of Florida's corporate shield doctrine.

3. Whether the district court correctly determined that the exercise of specific personal jurisdiction over Appellees-Defendants does not comport with due process requirements.

## STATEMENT OF THE CASE

The core issue at hand, pertaining to the rightful ownership of the trademarks for the image and name of Frida Kahlo, has been the subject of extensive legal battles across various nations over a number of years. (Doc. 14; Doc. 29:13-14; Doc. 29-1:6 ¶¶ 15, 19).

Plaintiffs brought this action against Defendants, who neither reside in the United States nor are domiciled or incorporated in Florida (Doc. 29). Despite this,

Plaintiffs seek to bring Defendants into court in Florida, asserting claims for tortious interference with an advantageous business relationship under Florida law and seeking a declaratory judgment under 28 U.S.C. § 2201 (Doc. 14). Relevant to this appeal, Plaintiffs claim that Defendants sent cease-and-desist letters to four of Plaintiffs' licensees, only two of whom are in Florida. *Id.* at 17 ¶¶ 12-13, 68-69. The Plaintiffs also seek a declaration under the Lanham Act regarding the rights to use the trademarks at issue for art exhibitions and phone covers and to use the images of Frida Kahlo. *Id.* at 18-19 ¶ 80.

Plaintiffs appeal an Order granting Defendants' Amended Motion to Dismiss the FAC without prejudice for lack of personal jurisdiction over the Defendants ("Order"). (Doc. 68; Doc. 69).

## I.     STATEMENT OF FACTS

This case is not novel; it is not the first time the parties have appeared before the district court. (Doc. 68:4) (citing *Frida Kahlo Corporation v. Pinedo*, No. 18-21826-Civ-Scola, 2021 WL 4147876 (S.D. Fla. Sept. 13, 2021)). Previously, Plaintiffs filed an action against Defendants in a haphazard attempt to strip Defendant Pinedo, the rightful owner of the Frida Kahlo mark and name, and Defendant Familia Kahlo of the rights conferred to them by the intellectual property laws of Mexico—where the underlying disputes and issues of law originate. That action was dismissed by the court for similar reasons as those laid out herein. *Id.*

Once again, Plaintiffs are attempting to bypass the laws of Mexico and the legal disputes ongoing in Panama and Spain by filing this action in Florida to try to gain some form of authentication for their false claims to the intellectual property rights of the Frida Kahlo mark. (Doc. 29-1:6 ¶ 21; Doc. 37: 4-5).

### A. Background

Frida Kahlo was a world-famous Mexican artist who passed away in 1954. Defendant Pinedo is Frida Kahlo's grandniece and a citizen and resident of Mexico. (Doc. 68:1). Pinedo owns Defendant Familia Kahlo, a Mexican corporation, and sporadically travels to the United States to promote Frida Kahlo and attend events. *Id.* After Frida Kahlo's death, certain rights to her intellectual property were passed to her niece, Isolda Pinedo Kahlo, who is Pinedo's mother, and to Pinedo. *Id.* at 2. Defendant Pinedo and her family, the closest living descendants of Frida Kahlo, have championed the legacy of one of Mexico's greatest painters and cultural icons. *Id.*

FKC was created in 2004 to commercialize the name and brand of Frida Kahlo. (Doc. 29:2) In 2005, Isolda Pinedo Kahlo and Pinedo, through Frikahlo de Mexico, S.A. de C.V., entered into an agreement with Casablanca Distributors C.A., assigning FKC certain Frida Kahlo trademarks ("2005 Agreement"). (Doc. 29-1:6 ¶¶ 17-19; Doc. 37:1; 37-1:3-30). Under the clear language of the 2005 Agreement and the subsequent assignment agreements, any conveyance of the Frida Kahlo mark

to FKC for then existing and future marks including any new marks registered by FKC stem from the rights conferred in said agreements. (Doc. 37:1-2).

Unfortunately, this commercialization led to those operating FKC to misappropriate the property rights to the brand, right from under the Defendants and the decedent family's nose. *Id.* Thus, on February 23, 2017, Pinedo rescinded and terminated the 2005 Agreement, causing all grants and assignments of rights to revert to the original grantor, *i.e.*, Defendants, effective immediately with no need for court intervention. (Doc. 29-1:6 ¶ 18). Thereafter, litigation between the parties ensued in several countries, including Panama and Spain. *Id.* ¶ 15, 19.

Despite, the recission of the 2005 Agreement, Plaintiffs claim to own hundreds of Frida Kahlo-related trademarks worldwide, including the six trademarks at issue in this lawsuit. (Doc. 14:10 ¶ 27). Additionally, Plaintiffs assert that they have advantageous business relationships with their licensees Primo Entertainment and Garber IMC to co-brand, promote, and publish walk-through exhibitions titled Frida Kahlo – The Life of an Icon ("Exhibitions"). *Id.* at 11 ¶ 30. Plaintiffs also alleged to have entered a contract with OEG Latino, an agent for Casely, a company that co-brands, produces, promotes, and sells phone covers, as a licensee, in the stores located at the Exhibitions. *Id.* ¶ 31. Plaintiffs claimed to advertise the Exhibitions on their website and that the Exhibitions are scheduled in seven cities in the United States, including Miami, Florida. *Id.* at 12 ¶ 36.

**B. The Cease-and-Desist Letters**

According to Plaintiffs, beginning in 2021, Defendants, through the General Manager of Familia Kahlo, Alfonso Durán ("Durán"), sent cease-and-desist letters to four of FKC's licensees: CIC Media TV, Primo Entertainment, OEG Latino, and Casely. Of these, only CIC Media TV and Primo Entertainment are based in Miami, Florida. (Doc. 14:12-13 ¶¶ 40, 48; Doc. 68:13). Further, although Plaintiffs list six licensees in their FAC, two of these licensees received letters in 2017 and are unrelated to the causes of action at issue. *Id.* at 12 ¶ 40. Only the four aforementioned licensees are included in the specific allegations within each count of the FAC. *Id.* at 17-18 ¶¶ 68, 75. The cease-and-desist letters provided, in relevant part:

> It has come to my attention that you are taking part in the production or commercialization of the immersive exhibitions sponsored by FRIDA KAHLO CORPORATION and LAYERS O REALITY, under the name "THE LIFE OF AN ICON".

> We would like to inform you that our represented, the heiresses of the painter Frida Kahlo, have filed before the Panamanian jurisdiction some precautionary measures against FRIDA KAHLO CORPORATION requesting the designation of a judicial administration.

> If the requested measures are admissible, the administration of FRIDA KAHLO CORPORATION will be assumed by a judicial administration that will be responsible for the defense of the interests of the company which will decisively affect all operations taken forward by the company, which are illegal for the purpose of the provisions of article 523 of the Commercial Code of Panama.

> We would also like to point out to you that, in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo, we have

also filed a lawsuit before the Spanish jurisdiction against Layers of Reality S.L., Frida Kahlo Corporation and the Dorado-Pizzorni marriage, requesting the nullity of any co-productions agreements reached by these natural or legal persons, in relation with the exhibition "THE LIFE OF AN ICON".

In accordance with the above-mentioned circumstances, we hereby have the obligation to request that you refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo, in which case we will hold you jointly and severally liable for any damages that may be caused directly to Frida Kahlo Corporation, and directly or indirectly, to the heirs of the painter.

If in the course of the next seven days, you do not formally inform us of your decision to withdraw definitively from the promotion of the exhibitions in question, we will proceed without further ado to subjectively expand against you the lawsuit that is being substantiated before the Spanish jurisdiction. […]

Sincerely,

**Alfonso Durán Durán**
**General Manager of Familia Kahlo S.A DE C.V**

(Doc. 29-2:2-3, 84-85, 166-67).

## C. The Current Lawsuit

Based on the above letters, on July 29, 2022, Plaintiffs filed their original complaint in this case against Pinedo and Familia Kahlo and subsequently amended it on December 15, 2022. (Doc. 14). The FAC alleged claims for tortious interference under Florida law and sought a declaratory judgment to determine the parties' rights to use the trademarks at issue in connection with Exhibitions and phone covers and to use the images of Frida Kahlo. *Id.* at 17-18.

Plaintiffs asserted that by sending cease-and-desist letters into the United States and Florida, Defendants intended to cause the licensees to cease production and promotion of the Exhibitions and phone covers without justification. (Doc. 14:14 ¶¶ 49-50). However, FKC failed to mention that the intellectual property rights to the Frida Kahlo mark were vested in Defendants under section XII of Article 90 of Mexico's Industrial Property laws and by virtue of the termination of the 2005 Agreement, which caused all grants and assignments of trademark rights to revert to Defendants. *See Frida Kahlo Corporation v. Pinedo*, No. 18-21826-Civ-Scola. (Doc. 29:2; Doc. 29-1:6 ¶¶ 16-19).

In their FAC, Plaintiffs also claimed that Pinedo, individually and on behalf of Familia Kahlo, regularly travels throughout the United States, and that, from May 2021 to November 2022, Pinedo attended several Frida Kahlo-related events and exhibits in San Antonio, Boston, Dallas, Denver, San Francisco, Chicago, New York, Houston, and Los Angeles. (Doc. 14:4-10 ¶¶ 17-24).

On January 31, 2023, and February 28, 2023, Defendants filed an Amended Motion to Dismiss the FAC and a Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, alleging that the court lacked both personal and subject matter jurisdiction. (Doc. 29, 37).

Relevant to this appeal, Defendants argued that exercising personal jurisdiction over them is improper for two reasons: (1) Florida's long-arm statute

does not warrant the exercise of jurisdiction over Pinedo, and (2) even if jurisdiction was warranted, it would be improper under the due process clause. *Id.*

First, Defendants argued that Florida's long-arm statute does not warrant the exercise of jurisdiction over Pinedo because Plaintiffs do not allege that she had a direct involvement in sending the letters or that she gained a personal benefit in sending them. (Doc. 29:10-11; 37:6-7). The mere fact that the letters were purportedly sent on her behalf is insufficient to bypass the corporate shield doctrine. (Doc. 37:6-7). Simply because Pinedo is an owner or officer of Familia Kahlo does not mean that the actions taken by the company can be attributed personally to her. (*Id.*; 68:9-10). Even if the letters were sent on behalf of Pinedo—which they were not—the corporate shield doctrine still stands if the purpose of the letters was to benefit the company. (Doc. 37:6-7; 68:9-10). Plaintiffs ignore the simple fact that the letters were sent by Durán, Familia Kahlo's General Manager. Therefore, Pinedo is covered by the corporate shield doctrine. (Doc. 29:10-11; 37:6-7; 68:9-10).

Regarding the due process argument, Pinedo, as an individual, did not take any actions in Florida to tortiously harm Plaintiffs. (Doc. 29:10-11; 37:6-7). The Plaintiffs alleged that exercising jurisdiction over Pinedo comported with due process because she had contacts with various other forums—but no contacts in Florida. Plaintiffs also claimed that Pinedo acted in Florida through Familia Kahlo when the letters were sent. (Doc. 14:4-10 ¶¶ 17-24; Doc. 14:11 ¶ 33, Doc. 30 ¶ 11).

However, these letters, sent by Familia Kahlo's General Manager, are not sufficient to confer personal jurisdiction over Pinedo. Further, as a matter of law, the four informative letters directed at third-parties for the purpose of enforcing Defendants' intellectual property rights abroad and inform them about foreign ongoing lawsuits against FKC do not establish purposeful availment over either Defendant, under either the minimum contacts or effects test. (Doc. 29:11; Doc. 68:12-13).

Moreover, Rule 4(k)(2) does not apply to Pinedo not only because exercising jurisdiction over her would violate the due process clause, but also because Plaintiffs have identified several other states where jurisdiction would be more appropriate— assuming injuries actually occurred in those states. (Doc. 37:9-10).

As part of their Motion to Dismiss, Defendants attached a sworn declaration from Durán, who acknowledged sending the cease-and-desist letters on behalf of Familia Kahlo in July 2022 to companies in Florida. (Doc. 29-1:3 ¶ 5). Durán stated that these letters aimed to inform the companies that their actions infringed on Familia Kahlo's property rights and to notify them of pending foreign litigation against FKC for its actions. *Id.* Durán also mentioned that the letters were the only limited contact that Familia Kahlo had with Florida, and that the company does not conduct business in Florida and does not use the state for any other purpose. *Id.* ¶ 7.

Similarly, Pinedo filed a declaration stating, *inter alia*, that she does not conduct any business in Florida, nor does she personally engage in any significant

or ongoing activity in Florida, and briefly explaining the extent of the lawsuit abroad. (Doc. 29-1:5-6 ¶¶ 9, 13, 15, 19).

Plaintiffs conducted jurisdictional discovery, but it was insufficient to survive Defendants' Motion to Dismiss. On March 14, 2023 and June 29, 2023, without leave of court and in violation of Local Rule 7.1(c), the Plaintiffs filed two untimely notices of "additional evidence" (Doc. 43, 57, 68:13). These untimely notices relate to Defendants' purported activities in Florida, including communications with *unrelated* third parties regarding *copyright* matters which are neither relevant nor at issue in the FAC, and two additional cease-and-desist letters, one of which was addressed to Plaintiff FKC after the present lawsuit was initiated. Simply put, Plaintiffs' claims in this case do not arise from any of the facts contained in Plaintiffs' untimely "additional evidence." (Doc. 43, 57, 68:13).

### D. The Order on Appeal

On December 28, 2023, the district court granted Defendants' Motion to Dismiss and dismissed the FAC without prejudice. (Doc. 68).

While the court found it had personal jurisdiction over Familia Kahlo under the Florida long-arm statute, it concluded that the corporate shield doctrine prevented it from exercising personal jurisdiction over Pinedo. *Id.* at 8-10. The court rejected Plaintiffs' argument that the corporate shield doctrine was inapplicable because Pinedo committed a tort in Florida by sending the cease-and-desist letters

through her agent, Familia Kahlo. *Id.* at 10. The court noted that "[t]he only factual support Plaintiffs offer is that Pinedo is an officer and the owner of Familia Kahlo, and Familia Kahlo identifies as Pinedo's representative in the cease and desist letters" but that Pinedo "is not by virtue of [her] position subject to personal jurisdiction." *Id.* Furthermore, while the FAC alleged that Familia Kahlo sent the letters on behalf of Pinedo, it does not allege that Pinedo took any action to target Florida or that she gained any pecuniary or personal benefit from activities in the state. *Id.*

The court also found that Plaintiffs failed to establish that personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment. *Id.* at 11-13. Applying the minimum contacts test, the court summarily rejected Plaintiffs' contentions, holding that "sending an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over a nonresident defendant." (Doc. 68:12). Additionally, Pinedo does not engage in any significant or ongoing activity in Florida, she is a citizen of Mexico and does not live, own property, or conduct business in Florida. *Id.* Similarly, Familia Kahlo is a Mexican corporation and has no place of business in Florida, and Pinedo's sporadic travel to Florida on behalf of Familia Kahlo does not establish sufficient minimum contacts for either Defendant. *Id.*

Only two of the four cease-and-desist letters at issue were addressed to licensees in Florida: CIC Media TV and Primo. *Id.* at 12-13. Aside from sending the letters, Defendants did not confront Plaintiffs' licensees in Florida, visit Plaintiffs' office in Florida to negotiate trademarks, or engage in any other activities that establish sufficient minimum contacts. *Id.* at 13. Therefore, the court held that Defendants did not purposefully avail themselves of the privilege of conducting activities within Florida. *Id.* at 12-13.

Since the court found that Plaintiffs did not satisfy the purposeful availment prong of the test, it did not address whether Plaintiffs' claims arise out of Defendants' contacts with the forum or whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* at 12.

Moreover, the court held that Federal Rule of Civil Procedure 4(k)(2) does not apply to Familia Kahlo because it is subject to the court's personal jurisdiction. *Id.* at 9. As to Pinedo, the court found that even if Rule 4(k)(2) applied to Pinedo, exercising jurisdiction over her would offend due process because her limited and sporadic trips to the United States on behalf of Familia Kahlo do not establish sufficient contacts with the United States "as a whole." *Id.*

Finally, the court found the improperly and untimely "additional evidence" submitted by Plaintiffs irrelevant because their claims did not arise from the facts alleged in the "additional evidence". *Id.* at 13. Thus, even if the Court were to

consider the "additional evidence," Plaintiffs nonetheless failed to meet their burden of establishing personal jurisdiction over the Defendants. *Id.* Plaintiffs filed their Notice of Appeal on January 26, 2024. (Doc. 69).

## II.    STANDARD OF REVIEW

Appellate courts review *de novo* the dismissal of an action for lack of personal jurisdiction. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). Findings of fact made by the district court are reviewed for clear error. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir. 1999).

## <u>SUMMARY OF THE ARGUMENT</u>

The district court's Order dismissing the FAC for lack of personal jurisdiction over Defendants, Pinedo and Familia Kahlo, should be affirmed. The Plaintiffs have failed to establish specific personal jurisdiction over Pinedo under the Florida long-arm statute due to the protection provided by the corporate shield doctrine. Plaintiffs have also failed to establish that exercising specific personal jurisdiction over both Defendants would comport with the Fourteenth Amendment's Due Process Clause.

First, the district court correctly applied the corporate shield doctrine, determining that Defendant Pinedo is not subject to personal jurisdiction under the Florida long-arm statute. The corporate shield doctrine provides that a nonresident corporate officer or employee is not subject to personal jurisdiction in Florida for

acts performed in their corporate capacity. The Plaintiffs claimed that Pinedo sent cease-and-desist letters in her personal capacity, which would subject her to jurisdiction. However, the evidence, including affidavits and the letters themselves, indicated that the letters were sent by Familia Kahlo's General Manager Durán, *on behalf of Familia Kahlo*, not by Pinedo individually. This evidence effectively negates the Plaintiffs' argument and supports the district court's application of the corporate shield doctrine to protect Pinedo from personal jurisdiction.

Second, the exercise of personal jurisdiction over both Defendants would violate the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiffs failed to establish that the Defendants purposefully availed themselves of the privilege of conducting activities within Florida. The minimum contacts test requires that Defendants' contacts with the forum state be their own choice and not random, isolated, or fortuitous. Plaintiffs' reliance on the cease-and-desist letters as a basis for personal jurisdiction is, without more, insufficient. The letters were sent by Familia Kahlo to merely inform third parties of their intellectual property rights and pending litigation in other jurisdictions, which does not constitute purposeful availment.

Furthermore, Plaintiffs cannot satisfy the "effects test" applicable in intentional tort cases, which requires that the Defendants commit an intentional tort expressly aimed at the forum state, causing an injury that Defendants should have

14

reasonably anticipated. The evidence shows that Familia Kahlo's cease-and-desist letters were not directed at Florida in a manner that would establish such intentional aiming. The letters were part of standard legal procedures to protect intellectual property rights and did not target Florida specifically.

The district court also correctly found that Rule 4(k)(2) does not apply to Pinedo. Rule 4(k)(2) allows for federal jurisdiction over a defendant if they are not subject to jurisdiction in any state's courts of general jurisdiction and if exercising jurisdiction is consistent with the Constitution. However, Plaintiffs themselves identified Pinedo's contacts with several states, making jurisdiction in those states more appropriate, if Plaintiffs in fact suffered damages in those states. Moreover, Pinedo's limited and sporadic trips to the United States on behalf of Familia Kahlo do not establish sufficient contacts with the United States as a whole, and thus, the exercise of jurisdiction under Rule 4(k)(2) would be improper.

Additionally, Defendant Pinedo's contacts with Florida are entirely unrelated to Plaintiffs' causes of action, and Familia Kahlo's contacts are limited to informative cease-and-desist letters, which are insufficient to establish personal jurisdiction.

Finally, the exercise of personal jurisdiction over Defendants does not comport with traditional notions of fair play and substantial justice. The burden on Defendants, who are residents and citizens of Mexico, would be significant,

requiring them to litigate in a foreign jurisdiction with substantial logistical and financial challenges. Florida's interest in adjudicating this dispute is minimal, as the core issues revolve around international trademark rights with limited direct impact on Florida. The Plaintiffs' interest in obtaining relief in Florida is outweighed by the significant burden on the Defendants and the potential for duplicative and conflicting judgments given the ongoing parallel litigations in foreign courts concerning much of the same subject matter. Therefore, the district court's Order dismissing the FAC should be affirmed.

## ARGUMENT

I.    **The Order Dismissing the FAC for Lack of Personal Jurisdiction Over Defendants Should be Affirmed Because No Personal Jurisdiction Under the Florida Long-Arm Statute Exists Over Pinedo due to the Corporate Shield Doctrine, And Exercising Jurisdiction Over Defendants Would Violate the Due Process Clause.**

The district court correctly granted the Defendants' Amended Motion to Dismiss, thereby dismissing Plaintiffs' FAC without prejudice for lack of specific personal jurisdiction over the Defendants. (Doc. 68).

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam). If the defendant challenges jurisdiction by

16

submitting affidavit evidence in support of its position, then the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.*

A federal court undertakes a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. *See Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,* 421 F.3d 1162, 1166 (11th Cir. 2005). A court can only exercise jurisdiction over a nonresident defendant if the exercise of jurisdiction: (1) is appropriate under the state long-arm statute, and (2) does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

Here, the Plaintiffs allege that the Court has specific personal jurisdiction over the Defendants. (Principal Br. at 37). "Specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Wolf v. Celebrity Cruises*, Inc., 683 F. App'x 786, 793 (11th Cir. 2017) (citations omitted).

## A. The District Court Correctly Held That Pinedo is Not Subject to Personal Jurisdiction Under the Florida Long-Arm Statute, As She is Protected by the Corporate Shield Doctrine.

The district court found that Defendant Familia Kahlo was subject to personal jurisdiction under the Florida long-arm statute's tortious acts provision, Section 48.193(1)(a)(2), Florida Statutes. The court determined that Plaintiffs' allegations were sufficient to show that they suffered injury in Florida because Familia Kahlo

sent cease-and-desist letters to some of their licensees in Florida regarding intellectual property infringement. (Doc. 68:8-9) (citing e.g., *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008), which held that a trademark infringement claim qualified as a tortious act under the Florida long-arm statute).

As to Pinedo, however, the district court correctly concluded that she was not subject to personal jurisdiction under the Florida long-arm statute's tortious acts provision by virtue of the corporate shield doctrine. (Doc. 68:9-10). Plaintiffs erroneously argue that the Order should be reversed as to Pinedo and that the same analysis applied to Familia Kahlo should apply to Pinedo, claiming that the cease-and-desist letters were purportedly sent on Pinedo's individual behalf, and not in her capacity as an officer of Familia Kahlo. (Principal Br. at 26). Plaintiffs are fundamentally mistaken, and the Order should be affirmed in its entirety.

Florida's corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee." (Doc. 68:9) (citing *Kitroser v. Hurt*, 85 So. 3d 1084, 1089 (Fla. 2012)). The rationale behind the corporate shield doctrine is the notion that it is "unfair to force an individual to defend a suit brought against him personally in a forum with which his

only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993).

While intentional misconduct by an individual defendant may constitute an exception to the corporate shield doctrine, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013), a nonresident individual defendant such as a corporate officer will only be subject to personal jurisdiction where he is a "primary participant" in fraud or intentional misconduct aimed at the forum state." *Inetianbor v. Cashcall, Inc.,* No. 13-60066-CIV, 2016 WL 4250644, at *8 (S.D. Fla. Apr. 5, 2016); *see also Coach, Inc. v. Class Beach Wireless, LLC*, No. 1:12-CV-22748, 2013 WL 12095144, at *2 (S.D. Fla. Mar. 21, 2013) (holding that "a corporate officer who directs, controls, ratified, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement even when he is acting for the company") (citation omitted); *State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598-99 (Fla. 1st DCA 2004).

The burden is on the Plaintiffs to show that Pinedo was a "primary participant" who "personally targeted intentional, wrongful acts at the State of Florida." *United Credit Recovery, LLC v. Bexten*, No. 6:11-CV-1714-ORL-31, 2012 WL 750299, at *4–8 (M.D. Fla. Mar. 7, 2012). Plaintiffs did not and cannot meet this burden.

In *Wyndham*, 869 So. 2d 592, the attorney general sued Wyndham and its executives over an undisclosed energy surcharge of $2.50 to $3.00 per night added

19

to room rates. *Id.* at 594-95. The trial court dismissed the case against the individual executives for lack of personal jurisdiction, but the First DCA reversed this decision for two of the executives, McCleave and Wagoner. *Id.* at 596. The court found that McCleave and Wagoner were not protected by the corporate shield doctrine and were subject to personal jurisdiction in Florida because they were "*primary instigators*" of the surcharge implementation. *Id.* at 598-99. Wagoner suggested the surcharge be implemented in all California hotels and directed McCleave to expand it to more cities, including those in Florida. *Id.* at 599. Wagoner communicated with a Florida manager, stating that McCleave would lead the surcharge implementation. *Id.* McCleave then developed a plan to charge a uniform fee across all Wyndham hotels and sent emails to hotels, including those in Florida, instructing them on how to inform guests about the surcharge after check-in. *Id.* Thus, as primary participants or instigators in the scheme, McCleave and Wagoner were not protected by the corporate shield doctrine and were subject to personal jurisdiction in Florida. *Id.*

Unlike in *Wyndham*, where the executives were active and primary participants, here, Plaintiffs do not argue that Pinedo was a primary participant. Instead, they contend that the corporate shield doctrine is inapplicable because Pinedo purportedly committed a tortious act in Florida by intentionally sending the cease-and-desist letters in her individual capacity. (Doc. 30:9; Principal Br. at 28). The only factual support Plaintiffs offer is that Pinedo is an officer and owner of

Familia Kahlo, that the letters identify Familia Kahlo as her representative, and that Pinedo did not deny sending the letters on her individual behalf. (Doc. 30:9; Principal Br. at 26, 28-29). However, Plaintiffs are mischaracterizing the evidence submitted by Defendants.

Plaintiffs' allegations that Pinedo sent the letters in her individual capacity are contradicted by the four corners of the FAC, which incorporates by reference the cease-and-desist letters, as well as by the affidavit submitted by Durán and Pinedo herself. (Doc. 29-1:2-5; Doc. 29-2:2-3, 84-85, 166-67). The content of these letters and affidavits are clear; they confirm that the letters were sent by Familia Kahlo and that Pinedo neither sent nor directed the sending of the letters. (Doc. 29-1:3 ¶ 5; Doc. 29-2:2-3, 84-85, 166-67). Furthermore, in her affidavit, Pinedo stated unequivocally that she does not "conduct any business in the State of Florida in an individual capacity," and does not "personally engage in any significant or ongoing activity in the State of Florida," clearly indicating that she did not send the letters on her personal behalf. (Doc. 29-1:5 ¶¶ 9, 13). Plaintiffs' claim, based solely on vague and conclusory allegations presented in their FAC, is thus insufficient to establish a prima facie case of personal jurisdiction over Pinedo. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318–22 (11th Cir. 2006) (finding that the reliance solely on vague and conclusory allegations "are insufficient to establish a prima facie case of personal jurisdiction").

The cease-and-desist letters sent and signed by Durán, the General Manager of Familia Kahlo, state, in relevant part:

> It has come to my attention that you are taking part in the production or commercialization of the immersive exhibitions sponsored by FRIDA KAHLO CORPORATION and LAYERS O REALITY, under the name "THE LIFE OF AN ICON".
>
> *We would like to inform you that our represented, the heiresses of the painter Frida Kahlo, have filed before the Panamanian jurisdiction some precautionary measures against FRIDA KAHLO CORPORATION requesting the designation of a judicial administration.* […]
>
> *We would also like to point out to you that, in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo, we have also filed a lawsuit* before the Spanish jurisdiction against Layers of Reality S.L., Frida Kahlo Corporation and the Dorado-Pizzorni marriage, requesting the nullity of any co-productions agreements reached by these natural or legal persons, in relation with the exhibition "THE LIFE OF AN ICON".
>
> In accordance with the above-mentioned circumstances, we hereby have the obligation to request that you refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo [. . .]
>
> Sincerely,
> **Alfonso Durán Durán**
> **General Manager of Familia Kahlo S.A DE C.V**

(Doc. 29-2:2-3, 84-85, 166-67) (emphasis added). Familia Kahlo's reference to Pinedo in the letter is solely to inform that Pinedo has filed lawsuits against FKC in Spain and Panama; it does not, in any manner, indicate that Pinedo sent or directed the sending of the letter. *Id.* The letter was sent by Familia Kahlo, as evidenced by

the signature of Durán, Familia Kahlo's General Manager. Durán's affidavit further clarifies:

> ***Familia Kahlo [] did send certain cease and desist letters in July of 2022 to companies in Florida*** with the purpose of informing them that their actions were infringing on the property rights of the company and to inform them of the pending litigation in Spain against Frida Kahlo Corporation for its actions against the property rights of Familia Kahlo [] abroad. The letters ask that the companies refrain from further infringement of Familia Kahlo []'s intellectual property rights. The cease and desist letters sent were not used to interfere with business operations, rather they were provided to third-parties to inform them of Familia Kahlo []'s intellectual property rights and the infringement of those rights by the actions taken by [FKC] and the third-parties if they continued to take the actions identified in the letters.

(Doc. 29-1:3 ¶¶ 5-6) (emphasis added). For the avoidance of doubt, the unequivocal language of both the letters and Durán's affidavit reveals that Pinedo did not personally send these letters or direct their sending. (Doc. 29-1:3 ¶¶ 5-6; Doc. 29-2:2-3, 84-85, 166-67). The actions taken by Familia Kahlo's General Manager are insufficient to confer personal jurisdiction over Pinedo. Plaintiffs have thus failed to meet their burden of proving that Pinedo was a primary participant or instigator in any wrongful acts aimed at Florida, making the corporate shield doctrine applicable and protecting her from personal jurisdiction in this case. *See Wyndham*, 869 So. 2d at 597–99.

Furthermore, courts generally impose "the additional requirement that the intentional tort must have been committed for the corporate officer's *personal benefit*, rather than merely for the benefit of the corporation." *Guzman v. Cruise*

*Yacht Op Co. Ltd*, No. 22-CV-21123, 2023 WL 2572220, at *3 (S.D. Fla. Mar. 20, 2023) (citation omitted).

Although the FAC alleges that Familia Kahlo sent the letters on behalf of Pinedo—which is contradicted by the letters themselves—it does not contain a single allegation that Pinedo gained any pecuniary or personal benefit from sending the letters. (Doc. 68:10). The fact that Pinedo is an owner and officer of Familia Kahlo is not the same as her receiving a personal benefit; it "is not enough to establish jurisdiction over [her] for actions taken in the scope of [her] employment entirely in another state." *Id.* (citing *Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-426-CIV, 2018 WL 4381196, at *3 (M.D. Fla. July 31, 2018) ("[t]he mere fact that Mr. Wollman "oversaw" or "was responsible for" certain aspects of RMCB's debt-collection practices [] and that such practices are alleged to have impacted Plaintiff in Florida is not enough to establish jurisdiction over him for actions taken in the scope of his employment entirely in another state); *see also Guzman*, 2023 WL 2572220, at *3.

Accordingly, Pinedo is not subject to personal jurisdiction under the Florida's long-arm statute, as she is covered by the corporate shield doctrine. Therefore, the district court's Order should be affirmed.

## B. Exercising Personal Jurisdiction Over the Defendants Would Violate the Due Process Clause of the Fourteenth Amendment.

The district court correctly found that Plaintiffs failed to establish that

24

personal jurisdiction over both Defendants comports with the Due Process Clause of the Fourteenth Amendment (Doc. 68:11).

The Due Process Clause protects one's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). To determine whether the exercise of jurisdiction violates or not the Due Process Clause of the Fourteenth Amendment, courts apply a three-part test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum state; (2) whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

### 1. Purposeful Availment

In cases involving intentional torts, there are two applicable tests for determining whether purposeful availment occurred: the "minimum contacts" and

the "effects test." *Louis Vuitton*, 736 F.3d at 1356–58. The "effects test" provides an additional means of determining the appropriateness of personal jurisdiction, but it "does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike." *Id.*

The district court applied the minimum contacts test and correctly found that no personal jurisdiction existed over the Defendants. (Doc. 68:12). Even if the Court had applied the "effects test," the result would have been the same.

### a. Purposeful availment under the "minimum contacts" test

The district court correctly found that Plaintiffs have not established that Defendants purposefully availed themselves "of the privilege of conducting activities within [Florida], thus invoking the benefits and protections of its laws." *Id.*

Under the minimum contacts test for purposeful availment, a court must assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are "related to the plaintiff's cause of action;" (2) "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum," "thus invoking the benefits and protections of its laws;" and (3) are "such that [the defendant] should reasonably anticipate being haled into court there." *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

To satisfy due process, a defendant must purposefully avail itself to the jurisdiction of a state by enjoying the privilege of conducting activities within the

forum state, and "the contacts must be the *defendant's own choice* and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (emphasis added). Jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (emphasis added). Here, Plaintiffs' boilerplate arguments do not rise to the constitutional standard of specific personal jurisdiction required by the Supreme Court to exercise jurisdiction over a nonresident defendant.

### i.  Defendants' contacts with the forum state are not related to Plaintiffs' causes of action

To satisfy the relatedness prong, the Defendants' contacts with Florida must be related to the Plaintiffs' cause of action or have given rise to it. *See Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 627 (11th Cir. 1994).

Here, Defendant Pinedo's contacts with Florida are entirely unrelated to Plaintiffs' causes of action—because she never had *any* meaningful contacts with Florida in the first place. (Doc. 29:10-11; 29-1:5). Plaintiffs allege that Pinedo had contacts with various forums through her travels and attendance at events, but none of these events occurred *in this forum* or were related to the claims at issue, namely, the alleged tortious interference and the declaration of the parties' rights to use the trademarks in question. (Doc. 14:4-10 ¶¶ 17-24). Thus, Pinedo's travels to other

states—*on behalf of Famlia Kahlo*—and for events unrelated to the claims at issue are irrelevant to this forum and to the alleged causes of action and simply cannot be used to satisfy this prong. (Doc. 29:5-6). *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317–18 (1945) (holding that the *casual* presence of an agent or even his conduct of isolated activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there).

Furthermore, any argument by Plaintiffs that Pinedo's contacts with Florida stem from the cease-and-desist letters sent by Familia Kahlo is without merit. This prong requires the existence of actual contacts, *i.e.*, an ***act*** by someone towards the forum state. Here, however, Pinedo has *no* contact with Florida, as she neither sent nor directed anyone to send cease-and-desist letters on her behalf. (Doc. 29:10-11; 29-1:5; 37:6-7). The FAC, which incorporates the letters by reference, clearly shows that Pinedo did not send these letters. The cease-and-desist letters sent by Familia Kahlo's General Manager, Durán, are insufficient to confer personal jurisdiction over Defendant Pinedo. (Doc. 29-1:3; Doc. 29-2:2-3, 84-85, 166-67). Thus, Pinedo's alleged contacts with Florida do not relate to Plaintiffs' causes of action.

Similarly, Defendant Familia Kahlo is a foreign corporation with no contacts in the forum state, outside of four informative cease-and-desist letters directed at third-parties *only two of which were sent to Florida*. (Doc. 29:12; Doc. 68:13). Thus,

Familia Kahlo's contacts with Florida are likewise not related to Plaintiffs' causes of action. Nevertheless, assuming *arguendo* that the first prong of the minimum contacts test is satisfied as to Familia Kahlo—which it is not, Plaintiffs still fail to satisfy the remaining prongs of the three-part test. *Carrillo*, 115 F.3d at 1542.

> **ii.    Defendants did not purposefully avail themselves of the privilege of conducting activities in Florida**

As for the second prong, Plaintiffs' argument that Defendants have sufficient minimum contacts with Florida because the cease-and-desist letters constitute "purposeful availment" is unconvincing, as determined by the district court. (Doc. 68:12-13). This argument has been rejected several times before and should be rejected here as well. The mere sending of *four* cease-and-desist letters, ***only two*** of which were directed to Florida, *without any additional actions* by Defendants to purposefully avail themselves of the privilege of doing business in Florida, are insufficient to satisfy the minimum contacts requirement. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

In *Red Wing*, the Federal Circuit held that exercising jurisdiction over a defendant patentee based on three cease-and-desist letters mailed into the forum state, even if coupled with licensing offers, was not constitutionally sound. *See id.; see also My PI, LLC v. My Pie Int'l, Inc.*, No. 14-62394-CIV, 2015 WL 11199823, at *2–3 (S.D. Fla. June 9, 2015) (declining to exercise personal jurisdiction because defendant's only enforcement activities were two cease-and-desist letters sent to

plaintiffs, and the sending of such letters alone does not create personal jurisdiction); *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("a patent owner may, without more, send cease and desist letters to a suspected infringer, *or its customers,* without being subjected to personal jurisdiction in the suspected infringer's home state"); *iSocial Media Inc. v. bwin.party Digital Ent. PLC*, No. 12-81278-CIV-HURLEY, 2013 WL 5588238, at *11 (S.D. Fla. Oct. 10, 2013) (holding that a single cease-and-desist letter, reserving the right to enforce a trademark, does not qualify as purposeful availment of the privilege of conducting business in a forum state); *Impact Productions, Inc. v. Impact Productions, LLC*, 341 F. Supp. 2d 1186, 1191–92 (D. Col. 2004) (finding that the use of cease-and-desist letters "do[es] not constitute 'express aiming' at the forum sufficient to establish the constitutionally required minimum contacts with the forum").

The rationale behind these decisions is that one "should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe,* 148 F.3d at 1360–61; *see also Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F. Supp. 2d 1270, 1281 (S.D. Fla. Apr. 3, 2008) (recognizing that sending cease-and-desist letters "to inform the recipients of allegations of infringement, to give them a chance to discontinue the infringing activity, and to protect the sender's legitimate legal rights" does no confer personal jurisdiction over the sender). Instead, for one to purposefully avail

itself and for the exercise of personal jurisdiction to be proper, there must be "other activities" directed at the forum and *related to the cause of action* beyond merely sending the letters. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003).

Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum, or executing exclusive license agreements with a party residing or regularly doing business in the forum. *See e.g., Campbell Pet Co. v. Miale,* 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee whose extra-judicial patent enforcement activity, *i.e.*, enlisting a third party to remove defendant's products from a trade show held in the forum state, went beyond merely informing the defendant of the purported infringement); *Breckenridge,* 444 F.3d at 1366-67 (entering into an exclusive license with an entity in the forum state was deemed an additional factor to justify the exercise of personal jurisdiction); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361–63 (Fed. Cir. 2001).

Conversely, personal jurisdiction is not established if the defendant's only "other activities" in the forum involve unsuccessful attempts to license the patent there. *See Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002). The same holds true where a defendant has licensed the patent in the forum state to multiple non-exclusive licensees but does not exercise control over the licensees' sales activities and has no dealings with those licensees beyond the receipt of royalty

income. *See Breckenridge Pharm.,* 444 F.3d at 1366; *see also My PI, LLC*, 2015 WL 11199823, at *2–3.

Here, the Plaintiffs argue that these "additional activities" include the fact that *Plaintiffs*' own offices are in Miami, that Defendants engaged their own partners and licensees in the *United States*, and that Defendants, through the letters, seek to nullify the agreements between Plaintiffs and its licensees and threaten litigation. (Principal Br. at 33-35).

However, the Plaintiffs' unilateral activity, such as having an office in Miami, is insufficient to establish jurisdiction over the Defendants. *See Burger King*, 471 U.S. at 474. The other "additional activities" referenced by Plaintiffs are improper, as they were introduced through notices of filing "additional evidence" without leave of court, in violation of Local Rule 7.1(c). (Doc. 68:13). Even if these submissions were timely and permissible, they are entirely irrelevant to the claims at issue, *i.e.*, Defendants' alleged tortious interference with FKC's licensees in July 2022, and the parties' rights concerning the name and image of Frida Kahlo in connection with art exhibitions and phone covers. *Id.*

These improper and untimely notices attempted to introduce evidence of Defendants' purported activities in Florida, including communications with *unrelated* third parties regarding *copyright* matters which are neither relevant nor at issue in the FAC, and two additional cease-and-desist letters, one of which was

addressed to Plaintiff FKC after the present lawsuit was initiated. Simply put, Plaintiffs' claims in this case do not arise from any of the facts contained in Plaintiffs' untimely "additional evidence." (*Id.*; Doc. 43; Doc. 57). Any attempt to introduce evidence of these "other activities" serves only to distract the Court from the pertinent facts of the case.

Additionally, Plaintiffs claim that Defendants tried to nullify the agreements between Plaintiffs and their licensees and threatened litigation. However, this assertion not only contradicts the actual content of the letters but, even if it were true, it remains part of the same cease-and-desist letters that cannot provide the basis for personal jurisdiction and thus cannot constitute "other activities." *See Red Wing*, 148 F.3d at 1361. The "other activities" required for personal jurisdiction must be separate and distinct from those mentioned in the cease-and-desist letters.

Plaintiffs' reliance on the *Healthe* case is also misplaced. In *Healthe*, the court held that simply sending a letter asserting a good faith claim of infringement would not give rise to personal jurisdiction. *See Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1126 (M.D. Fla. 2021). However, according to the plaintiff's *undisputed* allegations, the defendants in *Healthe* sent threatening letters in bad faith to the plaintiff in Florida and to one of plaintiff's customers in Florida, baselessly asserting patent infringement and demanding a response within twenty days regarding the customer's planned purchases. *Id*. This went beyond merely informing

others of potential infringement and was instead a bad faith attempt at "extra-judicial patent enforcement," interfering with plaintiff's customers and trying to collect information about a competitor's business. Thus, the court found that plaintiff showed a prima facie case for personal jurisdiction. *Id.* at 1125-26.

Here, the situation is markedly different. In *Healthe*, the court gave significant weight to the fact that the defendants sent a threatening letter "in bad faith" to one of the plaintiff's customers in Florida simply because those allegations were *never disputed* by the defendant. *Id.* at 1126. In this case, no such undisputed allegations exist. Additionally, Familia Kahlo did not send the letters in bad faith for several reasons. First, the 2005 Agreement through which Plaintiffs acquired the Frida Kahlo existing and future trademarks was rescinded and terminated in 2017, causing all grants and assignments of rights to revert to the original grantor, *i.e.*, Defendants, effective immediately with no need for court intervention. (Doc. 29-1:6 ¶¶ 17-19; Doc. 37-1:3-30). Second, the purpose of the letters was to inform licensees of existing, ongoing lawsuits in several other countries, such as Panama and Spain, against FKC and that the lawsuit could be expanded against the licensee before *Spanish* courts. (Doc. 29-2:2-3, 84-85, 166-67). Thus, the letters are not objectively baseless nor a product of bad faith.

It cannot be said that the informative letters sent to the *two* Florida licensees are sufficient enough to confer personal jurisdiction over Defendants, especially

when Familia Kahlo's General Manager mentioned the potential expansion of a lawsuit in Spain, not Florida. (*Id.*; Doc. 68:13). Unless Plaintiffs can demonstrate that the cease-and-desist letters were used for purposes other than enforcing Familia Kahlo's rights according to Mexico's intellectual property laws, their claim for personal jurisdiction is unfounded.

Importantly, as it relates to Defendant, Pinedo, she does not engage in any significant or ongoing activity in Florida: she is a Mexican citizen who does not live, own property, or conduct business in Florida. (Doc. 29-1:5; Doc. 68:12). Similarly, as it relates to Defendant Familia Kahlo, the entity is a Mexican corporation with no place of business in Florida. (Doc. 29-1:2-3; Doc. 68:12). Pinedo's occasional and sporadic travels on behalf of Familia Kahlo does not establish sufficient minimum contacts for either Defendant. (Doc. 68:12). Only two of the four letters, which were sent a *single* time, were addressed to licensees located in Florida: CIC Media TV and Primo. *Id.* at 13. Aside from Familia Kahlo sending these informative letters, Defendants did not engage with Plaintiffs' licensees in Florida, visit Plaintiffs' office in Florida to negotiate trademarks, or participate in any activities that would establish sufficient minimum contacts. *Id.* Therefore, Plaintiffs cannot meet their burden of proving that Defendants purposefully availed themselves of the Florida jurisdiction.

### iii. Defendants should not reasonably anticipate being haled into court in Florida

Finally, because Pinedo had *no* contact in Florida related to the causes of action herein, it was not reasonable to anticipate being haled into court in Florida. (Doc. 29-1:5; Doc. 68:12). Similarly, Durán's sending of four cease-and-desist letters, only two of which were sent to Florida, informing licensees of the lawsuits in Panama and Spain, is not sufficient. (Doc. 29-2:2-3, 84-85, 166-67; Doc. 68:12). *See e.g., iSocial Media*, No. 12-81278-CIV-HURLEY, 2013 WL 5588238, at *11 (citing *Stroman Realty Inc. v. Antt*, 528 F. 3d 382, 387 (5th Cir. 2008) (a "lone cease-and-desist letter does not evidence any anticipation of being haled into court, nor put party on notice it might be sued for purposes of satisfying minimum contacts test.").

Rather than establishing "purposeful availment," such cease-and-desist letters are instead "merely fortuitous" contacts with the forum, if at all.

### b. Rule 4(k)(2) does not apply to Pinedo

A court rarely invokes its jurisdiction under Rule 4(k)(2) and it is applied only in very limited circumstances. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016); *see also Giuliani v. NCL* (Bahamas) Ltd., 558 F. Supp. 3d 1230, 1244 (S.D. Fla. 2021) (Gayles, J.).

The district court correctly held that Rule 4(k)(2) does not apply to Familia Kahlo as it is already subject to the court's personal jurisdiction under Florida's long-arm statute. The district court, however, found that *even if* Rule 4(k)(2) applied

to Pinedo, exercising jurisdiction over her would offend due process because Pinedo's limited and sporadic trips to the United States on behalf of Familia Kahlo do not establish sufficient contacts with the United States "as a whole." (Doc. 68:9) (citing *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017)). This decision is correct and should be affirmed.

Rule 4(k)(2) provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." *Id.* Rule 4(k)(2) serves as a national long-arm statute, permitting "a court to aggregate a foreign defendant's nationwide contacts for jurisdictional purposes[.]" *Weinstock v. Abu Marzook*, 2019 WL 1470245, at *2 (S.D. Fla. Apr. 3, 2019). In any such cases, the applicable forum for purposes of Rule 4(k)(2) is the United States as a whole. *Id.*

In this case, Rule 4(k)(2) cannot afford a basis for jurisdiction over Pinedo for several reasons. First, Plaintiffs' own allegations establish that Rule 4(k)(2) is inapplicable to Pinedo because both the FAC and Plaintiffs' Principal Appellate Brief identifies Pinedo's contacts with several states to attend events or exhibitions—Texas, Massachusetts, Colorado, California, Illinois, and New York— where personal jurisdiction over her would be more appropriate if Plaintiffs were

actually injured in those states. (Doc. 14:4-10 ¶¶ 17-24; Doc. 37:9-10; Principal Br. at 6, 43).

Since the Plaintiffs fail to satisfy the first prong, this Court need not proceed with the due process analysis. However, even assuming, *arguendo*, that Plaintiffs met the first prong—which they did not—exercising jurisdiction over Pinedo would still violate the Due Process Clause of the United States Constitution. (Doc. 68:9). For the exercise of personal jurisdiction to comport with due process, the non-resident defendant must have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (citation omitted). Specifically, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum," and "the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Id.* These constitutional benchmarks of the minimum contacts analysis ensure that a defendant is only burdened with litigation in a forum where his "conduct and connection with the forum [...] are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Here, Pinedo's limited and sporadic trips to the United States to attend events **on behalf of Familia Kahlo** do not establish sufficient minimum contacts with the

United States "as a whole," particularly since these travels did not confer any personal benefit to Pinedo and are entirely unrelated to the Plaintiffs' claims at issue. (Doc. 68:9). *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1351–52 (S.D. Fla. 2017) (finding that "[a]llegations of a few additional individuals making a few additional transactions with [the defendant] in scattered states other than Florida does not transform this case into one of the "exceptional" cases" for purposes of the application of Rule 4(k)(2)."). Because Pinedo did not purposefully avail herself, individually, of the privilege of conducting activities within the United States, and her contacts with the United States are unrelated to the Plaintiffs' claims at issue, she should not reasonably anticipate being haled into court there. Thus, the potential to exercise jurisdiction over Pinedo under Rule 4(k)(2) is improper.

### c. Purposeful availment under the "effects test"

In the intentional tort context, the proper focus of the "minimum contacts" inquiry is the Calder "effects test." *See Walden v. Fiore*, 571 U.S. 277, 291 (2014). The "effects test" requires that the defendant (1) committed an intentional tort, (2) directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield*, 558 F.3d at 1221, n.28 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). "Under the effects test, acts expressly aimed

by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." *Id.*

Plaintiffs cannot in good faith allege that Pinedo committed an intentional tort directly aimed at Florida. The four corners of the FAC unequivocally show that the letters were sent by Familia Kahlo's General Manager, not Pinedo. (Doc. 29-1:2-3; Doc. 29-2:2-3, 84-85, 166-67). Consequently, the first prong of the "effects test" is not met as to Pinedo.

The second and third prongs are likewise unmet for any of the Defendants. As a matter of law, the use of cease-and-desist letters "do[es] not constitute 'express aiming' at the forum sufficient to establish the constitutionally required minimum contacts with the forum." *Impact Productions, Inc. v. Impact Productions, LLC*, 341 F. Supp. 2d 1186, 1191–92 (D. Col. 2004). As it has been previously mentioned throughout this brief, the fact that Familia Kahlo sent four informative letters, only *two* of which were directed to Florida, does not constitute "express aiming" sufficient to confer personal jurisdiction over Defendants, especially when the letters mentioned the potential expansion of a lawsuit in Spain, not Florida. (Doc. 68:13). *See Red Wing*, 148 F.3d at 1361. Moreover, Defendants could not have reasonably anticipated causing an injury in Florida, particularly since Plaintiffs are Panamanian companies, and the Defendants were merely informing licensees of the ongoing

lawsuits involving Plaintiffs and Defendants that are ongoing in Spain and Panama. (Doc. 29-2:2-3, 84-85, 166-67; Doc. 68:2).

The case *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1241 (M.D. Fla. 2019) is instructive. There, plaintiff sued for tortious interference based on cease-and-desist letters that threatened litigation, and the plaintiff attempted to invoke the *Calder* effects test to satisfy due process over a non-resident defendant. *Id.* at 1232. The court explained that the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1240. "While the Complaint alleges that Defendant's actions were intended to cause harm to Plaintiff in Florida, the "mere injury to a forum resident is not a sufficient connection to the forum" to satisfy the "minimum contacts" inquiry." *Id.* at 1241 (citing *Walden*, 571 U.S. at 290); *see also Force Ten, Inc. v. Trenditions, LLC*, No. 05-61694-CIV, 2006 WL 8432499, at *3 (S.D. Fla. Mar. 31, 2006).

The same rationale applies here. Plaintiffs' claim that Defendants' actions were intended to harm them in Florida is insufficient to establish personal jurisdiction. The cease-and-desist letters sent solely by Familia Kahlo's General Manager, Durán, do not demonstrate that Defendants "directly aimed" at Florida or that they should have reasonably anticipated causing an injury in Florida, nor is it sufficient to establish a meaningful connection to Florida. (Doc. 29-1:2-3; 29-2:2-

3). *See Walden*, 571 U.S. at 290. Plaintiffs cannot show more than mere untargeted action or a fortuitous result. Thus, exercising jurisdiction over the Defendants would violate due process, and the Order should be affirmed.

## 2. Arising Out of or Relatedness

Because the district court found that Plaintiffs did not satisfy the purposeful availment prong of the test, it did not address whether Plaintiffs' claims arise out of relate to Defendants' contacts with the forum. However, assuming *arguendo* that purposeful availment existed, the court would still have found that the claims do not arise out of or relate to those contacts.

Under this prong, the "plaintiff's claim must arise out of or relate to at least one of defendant's contacts with the forum." *Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010). Plaintiffs allege that Pinedo had contacts with various other states through her travels and attendance at events, but none of these events occurred ***in Florida*** or were related to the claims at issue, namely, the alleged tortious interference and the declaration of the parties' rights to use the trademarks in question. (Doc. 14:4-10 ¶¶ 17-24). Indeed, Pinedo's alleged contacts with the United States is not relevant under this prong. Therefore, Pinedo's travels to other states— *on behalf of Famlia Kahlo*—are irrelevant to this forum and simply cannot be used to satisfy this prong. (Doc. 29:5-6). *See Int'l Shoe*, 326 U.S. at 317–18.

To the extent that Plaintiffs claim that Pinedo's contacts with Florida arise out of and relate to the cease-and-desist letters sent by Familia Kahlo, that argument is baseless. This prong requires the existence of actual contacts, *i.e.*, an ***act*** by someone towards the forum state. Here, Pinedo has *no* contact with Florida, as she neither sent nor directed anyone to send cease-and-desist letters on her behalf. (Doc. 29:10-11; 29-1:5; 37:6-7). The letters themselves show that Pinedo did not send them. The letters, sent by Durán, are insufficient to confer personal jurisdiction over Pinedo. (Doc. 29-1:3; Doc. 29-2:2-3, 84-85, 166-67). Thus, Pinedo's alleged contacts with Florida do not arise out of or relate to Plaintiffs' causes of action.

Likewise, Familia Kahlo is a foreign corporation with no contacts in Florida, outside of four informative cease-and-desist letters directed at third-parties *only two of which were sent to Flo*rida. (Doc. 29:12; Doc. 68:13). Familia Kahlo's contacts with Florida similarly do not arise out of or relate to Plaintiffs' claims. (Doc. 29: 12).

### 3. Fair Play and Substantial Justice

Because the district court found that Plaintiffs did not satisfy the purposeful availment prong of the test, it did not address whether the exercise of personal jurisdiction over the Defendants comports with traditional notions of fair play and substantial justice. However, Defendants state that exercising personal jurisdiction over them in Florida does not comport with fair play and substantial justice.

*Assuming arguendo* that the cease-and-desist letters at issue arise out of or relate to Defendants' contacts with the forum and could establish the requisite purposeful availment (*quod non*), it is well-established that the exercise of personal jurisdiction based on such correspondence does not comport with principles of fair play and substantial justice. *See Red Wing Shoe Co., Inc. v. HockersonHalberstadt, Inc.,* 148 F.3d 1355, 1360–1361 (Fed. Cir. 1998).

Principles of fair play and substantial justice afford a patentee sufficient latitude to *inform* others of its rights without subjecting itself to jurisdiction in a foreign forum. *Id.* "A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Id.* Thus, "personal jurisdiction may not be exercised constitutionally when the defendant's contact with the forum state is limited to cease and desist letters, 'without more.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1363 (Fed. Cir. 2006); *see also Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.,* 552 F.3d 1324, 1341 (Fed. Cir. 2008) (finding no personal jurisdiction in a patent infringement case where the only acts in the forum were the sending of cease-and-desist letters). For these reasons, exercising jurisdiction over Defendants would not comport with fair play and substantial justice.

44

Furthermore, in the analysis of whether the exercise of jurisdiction over Defendants comports with fair play and substantial justice, this Court should also consider: "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477. Plaintiffs assert that Defendants failed to make a compelling case that the exercise of jurisdiction would violate tradition notions and fair play and substantial justice. Plaintiffs are mistaken.

First, without question, the burden on Defendants in this case is substantial. Defendants are citizens and residents of Mexico, not Florida or any other state of the United States. (Doc. 29-1:2-3 ¶¶ 3-4; Doc. 29-1:5 ¶¶ 2-5). Requiring Defendants to litigate in Florida imposes a significant hardship, including the logistical and financial complexities of defending a lawsuit in a foreign country. The fact that Defendants have engaged in litigation in other countries does not diminish the specific burden imposed by litigating in Florida. In fact, adding another lawsuit in Florida exacerbates this burden. Plaintiffs' reliance on unrelated travel by Defendants to cities in the United States, excluding Florida, is irrelevant to the issue of burden. Traveling for unrelated matters is fundamentally different from the burden of litigation. This action is but another attempt by Plaintiffs to continue to

undermine the proper channels by which it can challenge the property rights of Defendants in Mexico. (Doc. 29-1:6 ¶¶ 20-21). The first factor, therefore, weighs heavily against the exercise of jurisdiction.

This case is distinguishable from the case *Macrotrend Cap. Grp. Inc. v. Edwards*, No. 18-CV-61327, 2019 WL 2106421, at *7 (S.D. Fla. Mar. 4, 2019), cited by Plaintiffs. There, the burden on the individual defendant was minimal because he traveled to Florida on numerous occasions and had undertaken the position of CEO for a Florida corporation, including attending monthly meetings in Florida. Here, Defendants have no similar ties or commitments to Florida. (Doc. 29-1:2-6).

Second, Florida has minimal interest in adjudicating this dispute as it gains no value from determining who maintains the rightful title of the Frida Kahlo name and subsequent trademarks, especially given that Plaintiffs are Panamanian companies and Defendants are Mexican citizens. (Doc. 29-1:2-3 ¶¶ 3-4; Doc. 29-1:5 ¶¶ 2-5; Doc. 68:2). The connection to Florida is tenuous, and the alleged harm is not specific to the state. Florida's economic interest and the impact on its citizens are negligible. Plaintiffs argue that Florida has a substantial interest in adjudicating this dispute because letters were sent to Plaintiffs' licensees in Florida. However, these letters sent by Familia Kahlo were a standard legal measure intended to inform licensees of ongoing litigations in Panama and Spain. *See Red Wing,* 148 F.3d at 1360–1361; *see also Breckenridge,* 444 F.3d at 1363. These actions do not constitute significant

economic activity within Florida, nor do they cause substantial harm to Floridian citizens or the state's economy that would warrant Florida courts to adjudicate the matter. The central issue remains an international dispute over trademark rights, with minimal direct impact on Florida. Consequently, the second factor does not support the exercise of jurisdiction.

Third, Plaintiffs' interest in obtaining convenient and effective relief will not be served by litigating this case in Florida. Defendants have several parallel litigations against FKC in foreign countries which may render any outcome of this present case moot. (Doc. 29-1:6 ¶¶ 15, 19; Doc. 37:4-5). This Court and the parties may exhaust extensive amounts of resources litigating this case simply to have it become moot should a foreign court make a ruling. *Melgarejo v. Pycsa Panama, S.A.*, No. 11-81138-CIV, 2012 WL 12894733, at *4 (S.D. Fla. Aug. 15, 2012), aff'd, 537 F. App'x 852 (11th Cir. 2013). Plaintiffs claim they have a strong interest in obtaining relief in Florida given their principal place of business and a scheduled exhibition in Miami. However, the truth is that Plaintiffs suffered no damages or injury, as they continue to do business with all their licensees. There is no injury to redress. The third factor, therefore, weighs against the exercise of personal jurisdiction over Defendants.

Fourth, the interstate judicial system has no interest or stake in the outcome of this dispute, nor would exercising personal jurisdiction over Defendants help in

obtaining a more efficient resolution to controversies for the interstate judicial system. In fact, doing so would have the opposite effect. Given the existing parallel litigations in foreign courts, proceeding with this case in Florida risks duplicative and potentially conflicting judgments, leading to inefficiency and confusion. (Doc. 29-1:6 ¶¶ 15, 19). It would be more efficient to dismiss this case and allow the foreign litigations to proceed. The fourth factor, therefore, does not support the exercise of jurisdiction.

Finally, the shared interest of states to advance social policies weigh in favor of Defendants. The only claim made by Plaintiffs to subject Defendants to personal jurisdiction in Florida is the use of cease-and-desist letters that were utilized to *inform* infringers of Defendants' intellectual property rights and ongoing lawsuits in other countries, which is a standard and encouraged practice in resolving intellectual property disputes without resorting to litigation. (Doc. 29-1:3 ¶ 5; Doc. 29-2:2-3, 84-85, 166-67). If the Court takes those letters to be sufficient to subject a foreign defendant to personal jurisdiction it would go against the social policy that cease-and-desist letters are encouraged to resolve infringement disputes before legal action is taken. Penalizing Defendants by subjecting them to jurisdiction based on these letters would discourage such pre-litigation resolutions, contrary to established social policies. The fifth factor also weighs against the exercise of jurisdiction and

this Court should deny exercising personal jurisdiction over Defendants and dismiss the present action.

## **CONCLUSION**

For the reasons stated herein, this Court should affirm the district court's Order dismissing the Plaintiffs' First Amended Complaint for lack of personal jurisdiction over the Defendants.

Date: July 24, 2024

Respectfully submitted,

By: */s/ Joanna Andrade-Lehmann*
    Joanna Andrade-Lehmann, Esq.
    Florida Bar No.: 1014578
    joanna@epgdlaw.com
    EPGD ATTORNEYS AT LAW, P.A.
    777 SW 37th Ave., Ste. 510
    Miami, Florida 33135
    Telephone: (786) 837-6787
    *Counsel for Appellees-Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this Answer Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i). Excluding the parts of the document exempted by Fed. R. App. P. 32(f), this Answer Brief contains 11,735 words.

This Answer brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), because this brief uses Times New Roman 14-point font. This brief also complies with 11th Cir. R. 32-4.

By: */s/ Joanna Andrade-Lehmann*
Joanna Andrade-Lehmann, Esq.
Florida Bar No.: 1014578
joanna@epgdlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 24, 2024, I e-filed the foregoing with the

Court using CM/ECF, which will electronically serve a true and correct copy on all

counsel of record. I further certify that this Answer Brief is complete, and was served

via e-mail on this same date upon:

Darlene Barron
William R. Trueba Jr.
Avila Rodriguez Hernandez Mena & Garro LLP
<u>Dbarron@avilalaw.com</u>
<u>Wtrueba@avilalaw.com</u>
2525 Ponce de Leon Blvd., Ste. 1225
Coral Gables, FL 33134
Tel: (786) 594-4103
*Attorney for Appellants-Plaintiffs*

Cristina Alonso
ALONSO APPEALS
<u>alonso@alonsoappeals.com</u>
2020 Ponce de Leon Blvd.,
Suite 1005B
Coral Gables, FL 33134
Tel: (954) 667-8675
*Attorney for Appellants-Plaintiffs*

By: *<u>/s/ Joanna Andrade-Lehmann</u>*
　　Joanna Andrade-Lehmann, Esq.
　　Florida Bar No.: 1014578