CASE NO. 24-10293-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FRIDA KAHLO CORPORATION, a Panamanian corporation, and
FRIDA KAHLO INVESTMENTS, S.A., a Panamanian corporation,

*Appellants-Plaintiffs*,

v.

MARA CRISTINA TERESA ROMEO PINEDO, an individual, and
FAMILIA KAHLO S.A. DE C.V., a Mexico corporation,

*Appellees-Defendants*.

Appeal from the United States District Court
for the Southern District of Florida, Miami Division
District Court Case No. 1:22-cv-22399-DPG

## APPELLANTS' REPLY BRIEF

Darlene Barron
Florida Bar No. 108873
dbarron@avilalaw.com
William R. Trueba, Jr.
Florida Bar No. 117544
wtrueba@avilalaw.com
AVILA RODRIGUEZ HERNANDEZ
MENA & GARRO LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134-6049
Telephone: (786) 594-4103

CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com
ALONSO APPEALS
2020 Ponce de Leon Blvd.,
Suite 1005B
Coral Gables, FL 33134
Telephone: (954) 667-8675

*Counsel for Appellants*
*Frida Kahlo Corporation and Frida Kahlo Investments, S.A.*

***Frida Kahlo Corporation, et al. v. Mara Romeo Pinedo, et al.***
**Case No. 24-10293-C**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellants/Plaintiffs Frida Kahlo Corporation and Kahlo Investments, S.A., by and through undersigned counsel, and pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 26.1-2 and 26.1-3, hereby certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, or related entities may have an interest in the outcome of this case or appeal:

1. Alonso, Cristina, Esq. (counsel for Appellants-Plaintiffs)

2. Andrade-Lehman, Joanna, Esq. (counsel for Appellees-Defendants)

3. Avila Rodriguez Hernandez Mena & Garro LLP (counsel for Appellants-Plaintiffs)

4. Barron, Darlene, Esq. (counsel for Appellants-Plaintiffs)

5. Cristina Alonso, P.L.L.C. d/b/a Alonso Appeals (counsel for Appellants-Plaintiffs)

6. EPGD Attorneys at Law, P.A. (counsel for Appellees-Defendants)

7. Familia Kahlo S.A. de C.V., a Mexican corporation (Appellee-Defendant)

*Frida Kahlo Corporation, et al. v. Mara Romeo Pinedo, et al.*
**Case No. 24-10293-C**

8.  Frida Kahlo Corporation, a Panamanian corporation (Appellant-Plaintiff)

9.  Gayles, Hon. Darrin P. (United States District Court Judge)

10. Gomez, Oscar A., Esq. (counsel for Appellees-Defendants)

11. Kahlo Investments, S.A., a Panamanian corporation (Appellant-Plaintiff)

12. Pinedo, Mara Cristina Teresa Romeo (Appellee-Defendant)

13. Romeo, Frida Hentschel

14. Romeo, Mara de Anda

15. Torres, Hon. Edwin G. (United States District Court Magistrate Judge)

16. Trueba, Jr., William R., Esq. (counsel for Appellants-Plaintiffs)

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580

## **CORPORATE DISCLOSURE STATEMENT (CIP)**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Local Rules 26.1-1, 26.1-2, and 26.1-3, Appellants/Plaintiffs Frida Kahlo Corporation and Frida Kahlo Investments, S.A., state that they are both Panamanian corporations, which are not publicly traded companies or owned by any publicly traded company or a parent corporation.

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT .........................................C-1

TABLE OF CONTENTS......................................................................... iii

TABLE OF CITATIONS .......................................................................iv

ARGUMENT ...........................................................................................1

I.    The District Court Erred in Dismissing the First Amended
Complaint for Lack of Personal Jurisdiction Over Defendants ...........1

A.    The District Court Erred in Finding that Florida's
Corporate Shield Doctrine Prevented It From Exercising
Personal Jurisdiction Over Pinedo Under Florida's Long-
Arm Statute ...............................................................................5

B.    Exercising Personal Jurisdiction Over Defendants
Comports with Due Process Requirements ...............................9

1.    Prong Two: Purposeful Availment ...................................9

(a)    Purposeful availment under "minimum
contacts" test...........................................................9

(b)    The applicable forum is the United States ..........11

(c)    Purposeful availment under "effects test"............14

2.    Prong One: Arising Out of or Relatedness .....................16

3.    Prong Three: Fair Play and Substantial Justice..............17

CONCLUSION......................................................................................21

CERTIFICATE OF COMPLIANCE......................................................22

CERTIFICATE OF SERVICE ..............................................................23

# TABLE OF CITATIONS

**Page**

## Cases

*Calder v. Jones*,

    465 U.S. 783 (1984)......................................................................9

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,

    593 F.3d 1249 (11th Cir. 2010) ....................................................17

*Don't Look Media LLC v. Fly Victor Ltd.*,

    999 F.3d 1284 (11th Cir. 2021) ....................................................19

*Frida Kahlo Corp. v. Pinedo*,

    No. 18-21826-Civ-Scola, 2021 U.S. Dist. LEXIS 172909

    (S.D.Fla. Sept. 10, 2021) ............................................................1, 2

*\*Genetic Veterinary Sciences, Inc. v. LABOKLIN, GmbH & Co. KG*,

    933 F.3d 1302 (Fed. Cir. 2019) ............................................. 11, 13

*Guzman v. Cruise Yacht OP Co.*,

    No. 22-cv-21123-GAYLES/TORRES, 2023 U.S. Dist. LEXIS 46708

    (S.D.Fla. Mar. 20, 2023)..............................................................8

*\*Healthe, Inc. v. High Energy Ozone LLC*,

    533 F. Supp. 3d 1120 (M.D. Fla. 2021) ........................................9

*Jack Henry & Assocs., Inc. v. Plano Encryption Tech. LLC*,

    910 F.3d 1199 (Fed. Cir. 2018) ..................................................10

## TABLE OF CITATIONS
### (Continued)

**Page**

*Jackson v. Grupo Indus. Hotelero, S.A.*,

    No. 07-22046-CIV, 2008 U.S. Dist. LEXIS 88922

    (S.D. Fla. Oct. 20, 2008)...................................................................13

*\*Kitroser v. Hurt*,

    85 So. 3d 1084 (Fla. 2012) ...........................................................8, 9

*Lipcon v. Underwriters at Lloyd's*,

    148 F.3d 1285 (11th Cir. 1998) ......................................................19

*\*Louis Vuitton Malletier, S.A. v. Mosseri*,

    736 F.3d 1339 (11th Cir. 2013) ...................................... 8, 9, 14, 17

*Macrotrend Cap. Grp., Inc. v. Edwards*,

    No. 18-cv-61327-DIMITROULEAS/S, 2019 U.S. Dist. LEXIS 85791

    (S.D. Fla. Mar. 4, 2019)..................................................................18

*Nat. Answers, Inc. v. SmithKline Beecham Corp.*,

    529 F.3d 1325 (11th Cir. 2008) ........................................................3

*Oldfield v. Pueblo De Bahia Lora, S.A.*,

    558 F.3d 1210 (11th Cir. 2009) ......................................................13

*Person's Co. v. Christman*,

    900 F.2d 1565 (Fed. Cir. 1990) ......................................................19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,

    148 F.3d 1355 (Fed. Cir. 1998) .............................................. 10, 11

**TABLE OF CITATIONS**
**(Continued)**

<u>**Page**</u>

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,

    362 F. Supp. 3d 1226 (M.D.Fla. 2019) .........................................................14

*\*S.E.C. v. Carrillo*,

    115 F.3d 1540 (11th Cir. 1997) ................................................................9, 12

*Skyhop Techs., Inc. v. Narra*,

    58 F.4th 1211 (11th Cir. 2023) ....................................................................16

*Snow v. DirecTV, Inc.*,

    450 F.3d 1314 (11th Cir. 2006) .....................................................................7

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,

    563 F.3d 1285 (Fed. Cir. 2009) ...................................................................12

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,

    889 F.2d 1018 (11th Cir. 1989) .....................................................................4

*Trimble Inc. v. PerDiemCo LLC*,

    997 F.3d 1147 (Fed. Cir. 2021) ...................................................................10

*Walden v. Fiore*,

    571 U.S. 277 (2014)........................................................................ 14, 15, 16

**Statutes**

§ 48.193(1)(a)(2), Fla. Stat. .........................................................................7

15 U.S.C. § 1051 ("The Lanham Act") ................................................... 2, 3, 4, 12

15 U.S.C. § 1060(a)(1)................................................................................3

## TABLE OF CITATIONS
### (Continued)

**Page**

15 U.S.C. § 1127 ..............................................................................................4

### Rules

Rule 4(k)(2), Fed. R. Civ. P. ........................................................ 12, 13, 14

Rule 7.1(c), Local Rules, Southern District of Florida ...........................................11

## ARGUMENT

**I.    The District Court Erred in Dismissing the First Amended Complaint for Lack of Personal Jurisdiction Over Defendants**

The brief of Appellees-Defendants Mara Cristina Romeo Pinedo ("Pinedo") and Familia Kahlo, S.A. can be boiled down to two erroneous arguments: (1) there are legal proceedings in other countries arising from a 2005 Assignment[1] that pertain to the U.S. trademarks and claims at issue, and (2) the cease-and-desist letters were not sent on Pinedo's individual behalf. Neither argument is supported by the record.

The 2005 Assignment and related litigation in other countries are unrelated to the tortious interference and declaratory judgment claims at issue. As to the 2018 lawsuit, *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-Civ-Scola, 2021 U.S. Dist. LEXIS 172909, at *7 (S.D. Fla. Sept. 10, 2021), the district court there found that it had subject matter jurisdiction of claims concerning trademarks outside of the original 2005 Assignment, as the district court here found (Doc 68:5-6).[2] With respect to the assigned trademarks, the district court in the 2018 lawsuit held that "[a]s the Plaintiffs' claims regarding the *assigned* marks depend on a resolution of the Defendants' argument concerning ownership of the marks, as interpreted in the

---

[1] Defendants refer to the 2005 Assignment as the 2005 Agreement.

[2] References to the record are to document number and page number: (Doc [Docket No.]:[Page No.] (¶ [Paragraph No.])). Appellees' brief is referred to as: (Answer Br. [Page No.].

1

Assignment, the forum-selection clause controls." *Id.* (emphasis added). The court then went on to analyze whether it had personal jurisdiction for the claims relating to the trademarks *not governed by the assignment*. *Id.* ("As the forum-selection clause only pertains to the marks that were assigned, the Court must move to the next inquiry: whether the Court has personal jurisdiction over the Defendants for claims regarding marks that are *not governed by the Assignment*." (emphasis added)).

In this case, unlike in the 2018 Lawsuit, none of the U.S. trademarks at issue were assigned by Pinedo to Appellant-Plaintiff, Frida Kahlo Corporation ("FKC") in the 2005 Assignment. Rather, the trademarks here–in connection with art exhibitions and phone covers–were obtained by FKC more than fifteen years after execution of the 2005 Assignment. Further, Familia Kahlo is not a party to any assignment and was not a party to the 2018 Lawsuit.

The Defendants' cease-and-desist letters, giving rise to the claims at issue, assert that Defendants own trademarks that are actually owned by FKC. Plaintiffs seek a declaration under 15 U.S.C. § 1051 ("The Lanham Act") as to the parties' rights to use six U.S. trademarks in connection with art exhibitions and phone covers and to use the images of artist, Frida Kahlo, as licensed by FKC. (Doc 14:1 (¶ 1), 10 (¶ 25), 17-19 (¶¶ 68-81); Doc 68:4-5). The six U.S. trademarks at issue, owned by FKC, include five U.S. trademark registrations in connection with entertainment

services, namely art exhibitions[3] and one U.S. trademark registration in connection with cell phone covers[4]. (Doc 14:10-11 (¶ 27); Doc 30-1; Doc 68:2). FKC also has established common law rights through substantial and continuous use in commerce *in the U.S.* and is the owner of several copyrighted works, thereby expanding its product line to include goods and services not included in and beyond those in the original 2005 Assignment that Defendants assert resulted in litigation between the parties in other countries. (Doc 14:11 (¶¶ 28, 29), Doc 68:2).

The six U.S. trademarks at issue were obtained by FKC more than fifteen years after the 2005 Assignment. (Doc 30:3-4, 7-8). The 2005 Assignment could not pertain to the registration of new or subsequent trademarks, because no assignable right in "future" trademarks exists under the Lanham Act. *See* 15 U.S.C. § 1060(a)(1). Rather, "trademark rights flow from use." *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008) (citations omitted). Further, a trademark is always connected to the specific goods or services sold using that trademark. 15 U.S.C. § 1127; *Tally-Ho, Inc. v. Coast Cmty. Coll.*

---

[3] The trademarks at issue are registered and listed in the First Amended Complaint as (i) FRIDA KAHLO (stylized) in U.S. Reg. No. 6061413, (ii) IMMERSIVE FRIDA KAHLO EXHIBIT in U.S. Reg. No. 6908398; (iii) FRIDA KAHLO EXPERIENCE in U.S. Reg. No. 6896828, (iv) FRIDA EXPERIENCE in U.S. Serial No. 90780539, and (v) FRIDA KAHLO (standard character) in U.S. Reg. No. 6896829. (Doc 14:10 (¶ 27)).

[4] FRIDA KAHLO (standard character) in U.S. Reg. No. 6211125. (Doc 14:11 (¶ 27)).

3

*Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989) ("Trademark ownership is always appurtenant to commercial activity.").

Thus, the legal dispute between Pinedo and FKC, regarding the assigned intellectual property rights in the 2005 Assignment resulting in litigation in Panama and Spain, has no bearing on the U.S. trademarks at issue, the parties' rights to use the trademarks under The Lanham Act or Defendants' tortious interference with Plaintiffs' business relationships with its licensees. (Doc 14:10 (¶ 26); Doc 29-1:6 (¶ 15-17); Doc 68:2). Thus, the litigation in other countries related to the 2005 Assignment is irrelevant to the claims at issue and the jurisdictional analysis.

In this case, Plaintiffs alleged that Defendants do not have any rights of publicity related to Frida Kahlo's name or likeness in the United States. Defendants did not defend any of the purported trademark rights they alleged to own in their cease-and-desist letters to Plaintiffs' licensees. Defendants have never enforced any purported trademark rights in FRIDA KAHLO in the United States, even though they had the opportunity to do so before the United States Patent & Trademark Office's Trademark Trial and Appeal Board. (Doc 14:15 (¶¶ 56-60); Doc 30-3; Doc 68:3-4). The letters did not identify or provide any trademark or copyright registrations, or otherwise provide any evidence or information identifying that Defendants own any intellectual property rights relating to the use of Frida Kahlo's image and name in connection with the exhibitions or the phone covers. (Doc 14:12-

15 (¶¶ 36-52); Doc 29-2:2-3, 84-85, 166-67; Doc 68:3-4).

Defendants sent the cease-and-decease letters at issue to six FKC licensees, two of which, CIC Media TV and Primo Entertainment, are in Miami, Florida. (Doc 14: 12-14 (¶¶ 40, 48); Doc 29-2:2, 84, 166)). Through their letters, Defendants sought to shut down FKC licensee's art exhibitions, including an exhibition scheduled in Miami, available through Plaintiffs' website showing contact information with a Miami phone number.

This supports Plaintiffs' allegations that the letters were sent without justification, thereby intentionally interfering with Plaintiffs' business relationships and contracts with Plaintiffs' licensees, causing damages and warranting an injunction that protects Plaintiffs' intellectual property rights and enjoins Defendants from interfering with Plaintiffs' licensees. (Doc 14:15 (¶¶ 56-61), 19; Doc 68:4, 8).

A. **The District Court Erred in Finding that Florida's Corporate Shield Doctrine Prevented It From Exercising Personal Jurisdiction Over Pinedo Under Florida's Long-Arm Statute**

As the district court found, there is personal jurisdiction over Familia Kahlo under Florida's long-arm statute, because Plaintiffs alleged that they suffered injury in Florida, as a result of the cease-and-desist letters sent to Plaintiffs' licensees in Florida regarding intellectual property infringement and Defendants tortiously interfered with Plaintiffs' business relationships with their licensees. (Doc 68:8, citing Doc 14:12-14, 16-17, 18 (¶¶ 40-47, 65, 75-80)).

The First Amended Complaint alleges that Pinedo committed an intentional tort in Florida that caused harm in Florida, just like Familia Kahlo. Defendants contend that the same analysis does not apply to Pinedo because, notwithstanding the allegations in the complaint to that effect and the plain language of the cease-and-desist letters, the letters were not sent on Pinedo's individual behalf, but rather solely on behalf of Familia Kahlo. Defendants contend that Pinedo and Alfonso Duran, the manager of Familia Kahlo, denied this in their declarations. Not so.

The cease-and-desist letters state they were sent by Duran, not only on behalf of Familia Kahlo, but also on behalf of Pinedo, individually. The letters state, "[w]e would like to inform you that our represented, the heiresses of the painter Frida Kahlo" and "in our capacity as representatives of Mrs. Mara Cristina Teresa Romeo Pinedo." (Doc 14:13 (¶ 42); Doc 29-2:2-3, 84-85, 166-67). Defendants ignore this plain language.

Neither Duran nor Pinedo's declarations expressly dispute that the letters were sent on behalf of Pinedo personally. Defendants are unable to cite to any statements in either declaration to that effect, because there are none. (Doc. 29-1:2-3, 5-6). That the letters were sent by Duran on behalf of Pinedo, instead of by Pinedo herself, is of no moment. Defendants ignore that Florida's long-arm statute provides that a nonresident is subject to personal jurisdiction in Florida for any cause of action that arises from committing a tortious act "personally or through an agent" in Florida.

Fla. Stat. § 48.193(1)(a)(2). Because the letters state that they were sent on Pinedo's individual behalf, as alleged in the complaint, and neither Pinedo nor Duran state in their declarations that Pinedo was not aware that the letters were sent on her behalf or that she did not direct that the letters be sent on her individual behalf, the fact that she did not personally sign the letters is irrelevant.

Moreover, this Court should accept the allegations in the First Amended Complaint as true for the specific personal jurisdiction analysis and the declarations submitted by Defendants should be given little, if any, weight. Duran's initial declaration that the cease-and-desist letters were the only limited contact Familia Kahlo had with Florida, and Pinedo's declaration that she did not conduct any business in Florida in her individual capacity or personally engage in any significant or ongoing activity in Florida were contradicted by the declaration of Francisco Cordero (Doc 57-5), Duran's subsequent declaration (Doc 57-1), and a July 22, 2022 cease-and-desist letter, signed by Duran, as a representative of Familia Kahlo and Pinedo, directed to Loud & Live, a Florida corporation. (Doc 57-6; Doc 57-7). Further, the allegations of the complaint are not vague or conclusory and are supported by the letters themselves and the foregoing evidence, distinguishing this case from *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006).

Defendants argue that a nonresident individual defendant is only subject to personal jurisdiction where they are a "primary participant" in fraud or intentional

misconduct aimed at the forum state, citing district court decisions. (Answer Br. at 19-20). These cases do not hold that a plaintiff must make a showing beyond that required by this Court in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) or the Florida Supreme Court in *Kitroser v. Hurt*, 85 So. 3d 1084, 1090 (Fla. 2012).

The allegations against Pinedo, like those against FKC, are that Pinedo committed an intentional tort in Florida that caused harm in Florida. The cease-and-desist letters support Plaintiffs' allegations, which are not contradicted by any evidence submitted by Defendants. In any event, because the letters were sent on behalf of Pinedo, she was a primary participant in the alleged intentional misconduct.

Further, the letters were sent for Pinedo's personal benefit as an owner of Familia Kahlo to interfere with Plaintiffs' business relationships with its licensees, including those in Florida and prevent licensees from going forward with the exhibition in Miami. Defendants' reliance on *Guzman v. Cruise Yacht OP Co.*, No. 22-cv-21123-GAYLES/TORRES, 2023 U.S. Dist. LEXIS 46708, *6 (S.D. Fla. Mar. 20, 2023), is misplaced. That case was for retaliation for opposing discriminatory employment practices and there was no indication as to how those practices benefited the defendant director of sales who was acting solely in his capacity as an executive. Unlike *Guzman*, here, the personal benefit to Pinedo as an owner of Familia Kahlo is evident and in sending the letters, Duran acted on Pinedo's personal

8

behalf as he states in the letters.

Thus, the corporate shield doctrine does not apply to Pinedo and the district court erred in finding it prohibited the court from exercising jurisdiction over her. *See Louis Vuitton* , 736 F.3d at 1355; *Kitroser*, 85 So. 3d at 1090.

### B. Exercising Personal Jurisdiction Over Defendants Comports with Due Process Requirements

#### 1. Prong Two: Purposeful Availment

Exercising personal jurisdiction over Defendants comports with due process. The purposeful availment prong of the due process test was satisfied under the "minimum contacts" test and "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984); *Louis Vuitton*, 736 F.3d at 1356-57 (citing *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)).

#### (a) Purposeful availment under "minimum contacts" test

The district court erred in finding the "minimum contacts" test was not met because sending an infringement letter is insufficient to satisfy the requirements of due process. *Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1125 (M.D. Fla. 2021), is on point and demonstrates that the letters are sufficient to establish the necessary minimum contacts and that Defendants should have reasonably anticipated being haled into court in Florida, thereby establishing purposeful availment. As in *Healthe*, the cease-and-desist letters were sent in bad faith, because the trademarks at issue are owned by FKC. Defendants did not defend

any of the purported trademark rights they alleged they owned in the letters. The letters do not identify or provide any trademark or copyright registrations, or otherwise provide any evidence or information identifying that Defendants own any intellectual property rights relating to the use of Frida Kahlo's image and name in connection with the exhibitions or the phone covers. Indeed, Defendants have never enforced any purported trademark rights in FRIDA KAHLO in the United States. While Defendants point to the 2005 Assignment, as demonstrated above and in the principal brief, it is unrelated to the U.S. trademarks at issue here. This supports Plaintiffs' allegations that the letters were sent without justification, and hence in bad faith.

Defendants continue to erroneously rely on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998), and its progeny, in arguing that the cease-and-desist letters are insufficient to establish minimum contacts with Florida. Defendants fail to address *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021), wherein the Federal Circuit "rejected 'the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action,' explaining that *Red Wing* and its progeny 'did not create such a rule.'" *Id.* (citing *Jack Henry & Assocs., Inc. v. Plano Encryption Tech. LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018)). Defendants also fail to address *Genetic Veterinary Sciences, Inc. v. LABOKLIN, GmbH & Co. KG*, 933

F.3d 1302, 1312 (Fed. Cir. 2019), wherein the Federal Circuit reaffirmed this view of *Red Wing* and its progeny.

Here, unlike *Red Wing* and its progeny, Defendants seek to nullify the agreements between Plaintiffs and their licensees and threaten litigation in their cease-and-desist letters, while purporting to own trademarks that are not owned by them, but rather are owned by FKC. The letters establish tortious interference and relate to the declaratory judgment claim, which pertains to the trademarks at issue. The complaint alleges that six letters were sent, two of which were sent to companies in Florida. A seventh letter was sent to a Florida corporation and submitted as additional evidence. (Doc 57:6; Doc 57-6; Doc 57-7). Defendants also engaged their own partners and licensees in the United States. (Doc 57:3-5; Doc 57-2; Doc 57-5:2-5 (¶¶ 6, 11-13, 16-18)). Defendants contend that their "additional activities" are improperly referenced by Plaintiffs because they were introduced through notices of filing "additional evidence" without leave of court in violation of Local Rule 7.1(c). (Answer Br. 32). The additional evidence pertained to newly discovered facts. (Doc 57). Thus, Defendants' communications directed at the United States and Florida are sufficient to establish personal jurisdiction.

### (b)    The applicable forum is the United States

The applicable forum for purposes of the due process analysis is Florida or the United States as a whole. *See Carrillo*, 115 F.3d at 1544 (applicable forum for

minimum contacts analysis is the United States in cases where the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process); Fed. R. Civ. P. 4(k)(2). Defendants fail to substantively address this Court's decision in *Carrillo* or why Rule 4(k)(2) does not apply to Familia Kahlo. Defendants also fail to address *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009), wherein the Federal Circuit applies rule 4(k)(2)'s due process analysis because a patent claim undisputedly arises under federal law. The declaratory judgment action, regarding the parties' trademark rights and that of FKC's licensees, arises under The Lanham Act. Thus, the applicable forum for the due process analysis is the United States.

Defendants argue that Rule 4(k)(2) does not apply to Pinedo, because Plaintiffs' allegations establish Pinedo's contacts with several states to attend events or exhibits (Answer Br. at 37). Defendants do not identify, however, in which of those states they would be subject to suit or that the exercise of jurisdiction over Defendants in any of those states would be more appropriate than Florida. Under Rule 4(k)(2), "it is the defendant who must show that: either its contacts with the whole of the United States are constitutionally insufficient, or that there is an alternative state where jurisdiction would be proper." *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2008 U.S. Dist. LEXIS 88922, at *21-22 (S.D. Fla. Oct. 20, 2008) (citations omitted). Defendants' argument fails because they do

12

not identify an alternative state where jurisdiction would be proper.

While Defendants contend that their contacts with the United States are insufficient, Defendants do not address the similar case of *Genetic Veterinary Sciences*, 933 F.3d 1302, where the defendant's act of sending a single cease-and-desist letter directed to a potential infringer in Washington, coupled with the defendant entering into licensing agreements in other states satisfied due process requirements under Rule 4(k)(2). *Id.* at 1310-11. Defendants also ignore that they co-produced and licensed their purported rights for exhibitions in the U.S., openly authorized others to use Defendants' purported rights throughout the U.S., partnered with or entered into agreements with U.S. entities, and physically traveled into the U.S. to promote and launch Immersive Frida Kahlo exhibitions and other licensed events. Defendants' use of the FRIDA KAHLO trademark in connection with exhibitions relates to the tortious interference and declaratory judgment claims.

Defendants' reliance on *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009), is misplaced. There, an American who was injured while on a fishing excursion in Costa Rica sought to bring suit in Florida against the foreign resort that organized the outing. The plaintiff booked his stay at the resort through the internet, the defendant had no physical presence in Florida, and its sole connection to the state was a single promotional event unrelated to the plaintiff's trip. Not surprisingly, this Court found insufficient contacts to support jurisdiction.

13

Those facts certainly bear no resemblance to the facts of this case. Here, as the district court found, Plaintiffs' allegations are sufficient to show that they suffered injury in Florida. (Doc 68:8). Thus, due process requirements under Rule 4(k)(2) are satisfied.

### (c)    Purposeful availment under "effects test"

A defendant's single tortious act can establish purposeful availment under the "effects test," without regard to whether the defendant had any other contacts with the forum state, where the tort was intentional, aimed at the forum state, and caused harm the defendant should have anticipated would be suffered in the forum state. *Louis Vuitton*, 736 F.3d at 1356.

This case is distinguishable from *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1241 (M.D. Fla. 2019), on which Defendants rely. There, the plaintiff relied on the effects test and the court found that the plaintiff failed to satisfy the "minimum contacts" inquiry. The letters at issue in that case were not sent to the forum state and the only connection to the forum was the allegation that harm was sustained in the forum. In contrast, here, Defendants sent cease-and-desist letters to FKC's licensees in Florida.

*Walden v. Fiore*, 571 U.S. 277 (2014), is also distinguishable. The issue there was whether a court in Nevada was allowed to exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would

14

have delayed the return of funds to the claimants with connections to Nevada. Because the agent had no other contacts with Nevada, and because a plaintiff's contacts with the forum state could not be decisive in determining whether the defendant's due process rights were violated, the court in Nevada was not allowed to exercise personal jurisdiction under these circumstances. In essence, the agent's relevant conduct in seizing the claimants' cash occurred entirely in Georgia, and the mere fact that his conduct affected the claimants with connections to the forum state did not suffice to authorize jurisdiction. *Id.* at 289-90. *Walden* is not remotely like this case.

The effects test is met here because Defendants were aware that Plaintiffs and their licensees were in Florida, and as the district court found, Plaintiffs' allegations are sufficient to show they suffered injury in Florida because the letters were sent to some of Plaintiffs' licensees in Florida regarding intellectual property rights (Doc 68:8), and one of the exhibitions that Defendants sought to shut down was scheduled in Miami (Doc 14:12 (¶¶ 36-38)). Defendants cannot challenge the district court's factual finding in this regard, because they have not cross-appealed, nor could they establish this factual finding was clear error. The letters were sent with the intention of interfering with Plaintiffs' licensees and cause them to cease the production and promotion of phone cases and art exhibitions, including exhibitions in Miami, notwithstanding that the trademarks at issue are owned by FKC, not Defendants.

15

Defendants' conduct connects them to the forum, Florida and the United States, in a meaningful way. Thus, beyond the harm sustained in Florida, Defendants' contacts with Florida and the United States support the exercise of specific jurisdiction over Defendants. *See Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (distinguishing *Walden* on the basis that the defendant knowingly and intentionally directed its emails into Florida, a Florida resident received them, and the emails contained the alleged threats to cause damage to the plaintiff that gave rise to the claim at issue, thereby concluding the litigation had the required connection to Florida-based contacts to exercise specific personal jurisdiction in Florida).

### 2.    Prong One: Arising Out of or Relatedness

The tortious interference and declaratory judgment claims arise out of or relate to Defendants' communications into Florida and Defendants' activities in the U.S. The cease-and-desist letters were sent to companies in Florida. Defendants ask Plaintiffs' licensees in those letters to "refrain from participating, directly or indirectly, in any business initiative that involves the use of the name or image of the painter Frida Kahlo." (Doc 29-2: 3, 85, 167; Doc 14:11-14 (¶¶ 33, 40-48, 50)). Defendants also threaten to hold Plaintiffs' licensees "jointly and severally liable for damages," (Doc 29-2:3, 85, 167; Doc 14:12-13 (¶ 40)), stating that Defendants have requested the "nullity of any association or co-production agreements" between FKC and others, (Doc 29-2:2, 84, 166; Doc 14:15 (¶ 51)). As the district court found, there

16

was harm in Florida where Plaintiffs and some of their licensees are located. Defendants do not deny that they have traveled throughout the U.S. in connection with their own exhibitions. (Doc 14:4-10 (¶¶ 16-24); Doc 68:1). Such travel relates to the declaratory judgment claim, namely whether Defendants own rights of publicity in the United States for images or names used in connection with the art exhibitions or whether Defendants are infringing upon Plaintiffs' U.S. trademarks. (Doc 14:18 (¶ 77-81)). Thus, the tortious interference and declaratory judgment claims arise out of or relate to Defendants' communications into Florida and Defendants' activities in the U.S.

### 3.    Prong Three: Fair Play and Substantial Justice

Defendants had the burden to present "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). They failed to meet that burden.

First, while Defendants argue that the burden for them to litigate in a foreign country is great, Defendants do not offer any evidence in support of their argument and the fact that they are able to litigate in other foreign countries demonstrates otherwise. While litigation itself presents a burden, it is a burden all parties must bear irrespective of jurisdiction. Defendants attempt to distinguish *Macrotrend Cap.*

17

*Grp., Inc. v. Edwards*, No. 18-cv-61327-DIMITROULEAS/S, 2019 U.S. Dist. LEXIS 85791, at *18 (S.D. Fla. Mar. 4, 2019), on the basis that they have no ties or commitments to Florida. Not so. The declaration of Francisco Cordero (Doc 57-5), and subsequent declaration of Duran (Doc 57-1), reflect that Defendants are in negotiations to enter into licensing agreements with third parties in Florida for the adaptation of Frida Kahlo's biography and production of a musical, audiovisual entertainment series, documentary, and film. It also remains that Defendants have not shown that there is any other state where jurisdiction would be proper or litigation less burdensome. Indeed, their argument would foreclose suit in the U.S. over U.S. trademarks, which is untenable.

Second, Defendants do not provide any authority or evidence to support their argument that Florida has minimal interest in adjudicating this dispute as it gains no value from determining who maintains the rightful title of the trademarks. Indeed, their argument is contrary to the district court's finding of sustained harm in Florida. Defendants ignore that one of the exhibitions that they sought to shut down was in Miami and that they directed cease-and-desist letters to Plaintiffs' licensees in Florida. (Doc 14:12 (¶¶ 36-38)). Florida has a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents and a substantial interest in adjudicating this dispute because Defendants have threatened litigation against Plaintiffs' licensees, incorporated in Florida.

18

Third, Defendants contend that Plaintiffs' interest in obtaining convenient and effective relief will not be served by litigating this case in Florida, because Defendants have several parallel litigations against FKC in foreign countries which may render any outcome of this present case moot. Defendants, however, failed to present any evidence that the litigation in foreign countries pertain to the U.S. trademarks at issue. Indeed, they would not be able to do so, because U.S. trademark rights are for U.S. courts to determine, not a foreign tribunal. It is fundamental that "[t]he concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme." *Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990). Thus, a court in a foreign tribunal does not have jurisdiction to determine FKC's trademark rights owned and registered in the U.S.

Moreover, as the district court found in rejecting Defendants' argument of a lack of subject matter jurisdiction, *forum non conveniens* is the appropriate way to raise the argument that another jurisdiction should adjudicate the dispute and *forum non conveniens* was not asserted by Defendants in their Amended Motion to Dismiss the First Amended Complaint or otherwise briefed. (Doc 68:5-6) (citing *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021); *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1289 (11th Cir. 1998)).

Thus, because the issues here involve trademark rights and licensing,

19

Plaintiffs have an interest in obtaining convenient and effective relief in Florida given their principal place of business is in Florida and had a scheduled exhibition in Miami through a licensee incorporated in Florida.

Fourth, for the same reasons, the interstate judicial system has an interest in obtaining the most efficient resolution of this controversy as to U.S. trademarks and intellectual property, which continues without resolution in any other jurisdiction. The shared interest of states to advance social policies encouraging pre-litigation resolutions does not weigh in favor of Defendants because as established in the principal brief and above, Defendants' cease-and-desist letters did not inform infringers of Defendants' intellectual property rights. Rather, they were sent without justification because Defendants do not have any rights of publicity related to Frida Kahlo's name or likeness in the United States and Defendants have never enforced any purported trademark rights in FRIDA KAHLO in the United States. Indeed, there is no evidence disputing the foregoing allegations in the First Amended Complaint or supporting any argument that Defendants own intellectual property rights relating to the use of Frida Kahlo's image and name in connection with the exhibitions or the phone covers at issue. (Doc 14:12-15 (¶¶ 36-52); Doc 29-2:2-3, 84-85, 166-67; Doc 68:3-4).

Thus, the exercise of personal jurisdiction comports with fair play and substantial justice.

## **CONCLUSION**

Based on the foregoing, this Court should reverse and remand for further proceedings on the First Amended Complaint.

Date: August 14, 2024

Respectfully submitted,

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com
ALONSO APPEALS
2020 Ponce de Leon Blvd., Suite 1005B
Coral Gables, FL 33134
Telephone: (954) 667-8675

and
Darlene Barron
Florida Bar No. 108873
dbarron@avilalaw.com
William R. Trueba, Jr.
Florida Bar No. 117544
wtrueba@avilalaw.com
AVILA RODRIGUEZ HERNANDEZ
MENA & GARRO LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134-6049
Telephone: (786) 594-4103

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney hereby certifies that this brief complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,819 words.

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), because this brief uses Times New Roman 14-point font. This brief also complies with 11th Cir. R. 28-3 and 32-4.

*/s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and is being served on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF on August 14, 2024, including:

Joanna Andrade-Lehmann, Esq.
Oscar A. Gomez, Esq.
EPGD ATTORNEYS AT LAW, P.A.
777 SW 37th Avenue, Suite 510
Miami, Florida 33135
Joanna@epgdlaw.com
Oscar@epgdlaw.com
*Counsel for Appellees-Defendants*

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580